HOPE THOMAS, as Executor, Mary G. Thomas, Bessie M. Jones, Kyde T. Morris, Maggie Wood, James P. Thomas, Everett L. Thomas and Hope D. Thomas, Individually, Plaintiffs-in-Error, v. MILDRED INEZ BIVENS HAMLIN, Defendant-in-Error.
—404 S.W.(2d) 569.

Western Section, at Jackson. April 27, 1964.

Certiorari Denied by Supreme Court January 4, 1965.

14

Harold R. Ratcliff, Memphis, for plaintiffs in error.

J. Frank Hall, Memphis, for defendant in error.

AVERY, P.J. (W.S.). This case comes to this Court from the Circuit Court of Shelby County, Division I, Honorable W. E. Quick, Judge. It is a will contest proceeding, and involves two wills executed by Nannie Inez Camp, who died in Memphis, Shelby County, Tennessee, on the 31 day of March 1962, being a long time resident of the County and State at the time of her death.

The said Nannie Inez Camp was 88 years of age at the time of her death. Her Memphis affairs were being administered by a conservator, Mr. Henry A. Beaty, an attorney, who was appointed as such by the proper proceedings in the Probate Court of Shelby County, Tennessee. She had executed two wills in the latter years of her life. The first will here involved was executed on the 13th day of June, 1959, and by which she bequeathed her personal property to her sister, Mary G. Thomas, a one-sixth of all of her real property or its proceeds if sold by her, to six of her brothers and sisters, having devised to a brother Everett L. Thomas only $5.00, stating her reasons therefor to be that this brother had the use and benefit of her real property and store since 1942, and that he had derived considerable profit therefrom, and that none of her other brothers and sisters had any benefit from her property.

In this opinion the above referred to will is designated as Will No. 1. In that will, No. 1 she named her brother, Hope Thomas as executor without bond.

The other will, which will be referred to in this opinion as Will No. 2 was executed on the 16th day of December 1961. By Will No. 2 she bequeathed all of her estate of every kind to her niece, Mildred Inez Bivens Hamlin and named this niece as executrix without bond.

Will No. 1 was duly admitted to probate in common form, on the petition of the executor, Hope Thomas, by Judge Sylvanus Polk, Probate Judge of Shelby County, Tennessee, on the 3rd day of April 1962, and administration of the estate was entered into by the said Hope Thomas.

The executrix named as such in Will No. 2 filed a petition in said Probate Court on April 25, 1962, naming all proper parties and in that petition she contests Will No. 1 and that the contest be certified to the Circuit Court of Shelby County, as provided by law on the issue of devisavit vel non, and that the Will No. 2 be admitted to probate as and for the last will of the said Nannie Inez Camp.

Statutory provisions with respect to such contests were complied with by all the parties and the Court entered a proper order as follows:

"That the paper writing dated June 13, 1959, heretofore probated as the Last Will and Testament of Nannie Inez Camp, be sent to said Court;

"That the paper writing bearing date of December 16, 1961, purporting to be the Last Will and Testament of Nannie Inez Camp, deceased, be sent up to said Circuit Court so that Mildred Inez Bivens Hamlin may propound it for probate as the Last Will and Testament of said deceased."

Thereafter declarations with respect to both wills, and pleas contesting each were all duly filed in the Circuit Court of Shelby County, Tennessee. The plea of Mildred Inez Bivens Hamlin to the declaration with respect to Will No. 1 simply states that this Will No. 1 is not the last will and testament of Nannie Inez Camp and that it was revoked by Will No. 2.

The pleas of Hope Thomas are in effect that:

1—Will No. 2 was not executed as required by law.

2—That if found to be shown to have been executed as required by law, that the alleged testatrix, Nannie Inez Camp, was in such condition at the time Will No. 2 was executed that she lacked testamentary capacity.

3—That in event that the contestants of Will No. 2, is taken as to their contention in pleas 1 and 2, they state that the execution of the Will No. 2 was result of undue influence and fraud of the said Mildred Inez Bivens Hamlin, executrix, and the sole beneficiary named therein.

The case was heard before the said Honorable W. E. Quick, Judge of Division I of said Court beginning on the 25th day of March 1963, to a jury and at the conclusion of the evidence, argument of counsel, and charge of the Court, the jury found in favor of Will No. 2 saying:

"upon their oath, do say that they find that the paper writing dated December 16, 1961, is the last will and testament of Nannie Inez Camp, deceased."

Upon that verdict the Court entered an order as follows:

"IT IS, THEREFORE, BY THE COURT, ORDERED, ADJUDGED AND DECREED THAT the paper writing dated December 16, 1961, is the last will and testament of Nannie Inez Camp, deceased."

He then further ordered that:

"the Court finding that both wills were offered for probate in good faith by the executors named therein

and that this suit is a proper discharge of the duties of the said executors under the law.''

He made the necessary orders by which a certified copy of the verdict and judgment, together with the original Will No. 2 would be transmitted back to the Probate Court of Shelby County, Tennessee, there for record as required by law.

After the entry of the verdict, motion for new trial was seasonably filed, which embraced some ten specific grounds, and on hearing of that motion the Court overruled and disallowed it. The entry of that order, to all of which exceptions were saved, was regularly made on April 23, 1963, and therein the Court granted an appeal to this Court, fixed appeal bond in the penalty of $500.00 conditioned as required by law, and that contestant be allowed 60 days in which to file the bond or the oath provided for poor persons and the bill of exceptions.

This record, in addition to the briefs, motion for diminution etc., contains five separate volumes. One of which is the technical record and four volumes of the bill of exceptions. The five volumes contain approximately 650 pages. There is also a volume of exhibits in addition to the above designated record. Therefore, it will be seen that these wills were hotly contested or litigated. The contestants of Will No. 2 are the appellants, the six brothers and sisters and executor named in Will No. 1, have perfected their appeal in error, and have assigned errors.

It should be said here that there is no doubt that each of the involved testamentary documents were executed in accord with the statutory requirements for the execution of a witnessed will, and so show upon the face of

each document, in addition to the proof in the case, which in that regard is uncontradicted.

Assignment of error No. 1 attacks a certain part of the charge of the Court and is as follows:

"I

"The trial court erred in charging the jury as follows:

"So, gentlemen of the jury, there being no controversy about the formal execution of the paper writing dated December 16, 1961, introduced in evidence, I charge you, as a matter of law, that said paper writing has been prima facie, or on its face, established as a valid will of real or personal property. However, gentlemen of the jury, the contestants, or defendants, by their plea, say that the paper writing introduced in evidence is not the last Will and testament of Nannie Inez Camp, and defendants contend under their plea that said paper writing is not the last will and testament of Nannie Inez Camp because at the time said paper writing was executed, Nannie Inez Camp was of unsound mind and not capable of making a will, and further, contestants contend that said paper writing is not a will because of undue influence practiced or brought to bear upon Nannie Inez Camp by Mildred Inez Bivens Hamlin.

"Gentlemen of the jury, I charge you that even though the paper writing introduced in evidence has been prima facie established as a will by proof of its due execution, that nevertheless, it is not a valid last will and testament if it be established by sufficient proof at the time said paper writing was executed by Nannie Inez Camp that she was not of sound mind and dis-

posing memory or that the said paper writing was procured by undue influence practiced and brought to bear upon her by any party.

"And I further charge you, gentlemen of the jury, that when a paper writing has been established prima facie, that is, on its face, as a valid will, that the law presumes testamentary capacity on the part of the party executing said paper writing, but it is a presumption that may be overcome by proof sufficient to establish that the party signing said paper writing did not possess testamentary capacity, and the burden of overcoming the presumption of testamentary capacity is cast upon the assailing parties or contestants, and in this case, gentlemen of the jury, I charge you that the burden of proof is upon the contestants, the brothers and sisters of the deceased, of showing by the greater weight or preponderance of the evidence that at the time the said paper writing was signed by Nannie Inez Camp that she was not of sound mind and disposing memory, and further, I charge you, the burden is upon the contestants of showing by the greater weight or preponderance of the evidence that the execution of said paper writing by Nannie Inez Camp was procured through undue influence practiced or brought to bear upon her at the time by the beneficiary."

Immediately following that assignment counsel says:

"This was error because the undisputed facts show that the testatrix, Nannie Inez Camp, was completely under the dominion and control of the defendant-in-error, Mildred Inez Bivens Hamlin, and lacked testamentary capacity.

"Under these facts, the burden of proof both as to testamentary capacity and the absence of undue influence was upon the defendant-in-error, Mildred Inez Bivens Hamlin."

On the other hand replying to assignment of error No. 1 it is insisted by counsel for proponent that:

"It was not error because there is abundant evidence to show that the testatrix was freely and voluntarily exercising her own will in choosing to live with her niece, Mrs. Hamlin. * * *

"Mrs. Camp was of sound mind on December 16, 1961, at the time of the execution of her will."

It is needless for us to say that the verdict of the jury being considered in this Court must be considered in the same light in a will contest case that it is viewed or considered in any other classification of lawsuits. So that if there is any material evidence, that is, evidence material to the issue in controversy, taken in connection with all the other evidence constituting substantial evidence, which is such evidence as reasonable mind's might accept as adequate to support a conclusion, we can not set aside the verdict and judgment, but to the contrary must support the verdict in the absence of effective error otherwise. Cude v. Culberson, 30 Tenn.App. 628, 209 S.W.2d 506. So that if there is material and substantial evidence of the quantity sufficient to support a verdict, weighed in connection with all reasonable inferences to be drawn therefrom to justify the jury in determining that at the time Nannie Inez Camp executed Will No. 2 she was of sound mind or of sufficient mind to understand her act, and evidence sufficient to support the verdict of the jury that she was

not the victim of undue influence, certainly the charge of the Court attacked in assignment of error No. 1 is correct. Having proven the formal execution of the will, there was a presumption in favor of the validity of the will, which of course could be overcome by proper sufficient proof of incapacity.

In Hammond v. Union Planters National Bank, 189 Tenn. 93, 99, 222 S.W.2d 377, 380, our Supreme Court in commenting upon the burden of proof resting with a party when the capacity of a testator is challenged, said:

"* * * the same rule applies in contested will cases as in other civil cases. In other words the question of testator's alleged insanity 'is to be submitted to the jury on the preponderance of the evidence with consideration of the presumption in favor of sanity.' "

Of course, that means where it has not been shown that the testator was once insane or of mind insufficient to execute a will. See also 292 S.W.2d 492, 497.

When there is sufficient proof in the record to establish the fact of capacity sufficient to justify the jury in arriving at a verdict sustaining a will under that kind of attack, we know of no case which shifts the burden from the contestant upon the ground of incapacity, to the proponent of the will, except where there has been acceptable proof of prior insanity, such as commitment etc. so as to shift the burden of proving mental incapacity to the proponent.

The law does not require that persons must be able to dispose of their property with proper judgment and discretion in order to make a will or a conveyance. It is sufficient that they understand what they are about.

Simple weakness of mind or understanding is no objection to a man disposing of his estate by will. Ford v. Ford, 26 Tenn. 92, 100; Jones v. Sands, 41 Tenn.App. 1, 292 S.W.2d 492, 496; Pritchard on Wills, Vol. 1, p. 110, Section 97.

■ This does not mean that a person of unsound mind can make a will, but it means that a person who understands the result of his act is presumed, when the execution of the will is shown to have been in accord with our law, to be mentally capacitated, and that presumption can not be overcome by testimony of simple physical or even mental weakness.

■ It seems that counsel for appellant rests his position upon the fact that Mrs. Hamlin joined in a petition which was filed in the Probate Court of Shelby County seeking the appointment of a conservator for the business affairs of Mrs. Camp prior to the time she executed Will No. 2 and that such appointment or such a decree, which is exhibited in the record, based upon that petition appointing a conservator for Mrs. Camp, is the same as having had a determination of her mental incapacity. It is true that in that petition there was an allegation of the physical and mental weakness of Mrs. Camp but not that she was mentally insane. The allegation merely was that:

"* * * by reason of her advanced age and mental and physical weakness, she is incapable of managing her own estate and that a conservator should be appointed to have charge and management of the property and person of the said Mrs. W. A. (Nannie Inez) Camp."

Passing now to the other contention with respect to assignment of error No. 1 that Mrs. Hamlin exercised

such influence over Mrs. Camp as amounted to undue influence based upon confidential relationship and without any proper competent advise, in this regard counsel for the appellant relies upon Kelley v. Brading, 47 Tenn.App. 223, 337 S.W.2d 471.

Furthermore, what is being said in this opinion with respect to this latter part of this assignment of error No. 1 applies to many of the other assignments of error, the quoting of which, as hereinafter shown, shows such relationship to the facts here referred to as will be practically a sufficient reason for the conclusions that this Court has reached.

Counsel insists that this question of fiduciary relationship is based upon the following referred to, and by him stated to be facts revealed by the record:

1—On February 16, 1960, Mrs. Hamlin removed Mrs. Camp from the place where she was living to the home of Mrs. Hamlin and kept her constantly under surveillance until her death.

2—Mrs. Hamlin secured a lawyer to draft Mrs. Camp's will December 16, 1961, and was present at its execution.

3—That from the date, February 16, 1960, to the death of Mrs. Camp that Mrs. Hamlin handled all of the business affairs of Mrs. Camp.

4—That Mrs. Camp was easily influenced and vulnerable to persuasion and susceptible to suggestion.

5—That the appointment of a conservator for Mrs. Camp and her property as hereinbefore related, and

6—That she was the sole executrix of the Will No. 2 and the sole beneficiary under the will.

If it could be said that the answer to the contention of each of the matters above set forth, as revealed by the record, is in the affirmative and without sufficient justification, then the combination of all of it would present to the Court such a state of facts as would fully warrant the Court in charging that a fiduciary relationship did exist; that with such facts the burden of going forward to show the jury that such activities had no effect upon the testatrix or that it did not amount to undue influence, would be upon the proponents of Will No. 2. The affirmative of the contentions does appear to these particular points:

That the testatrix did live in the home of proponent, Mrs. Hamlin from the time she went there in February 1960 until the date of her death. Mrs. Hamlin was a niece of the testatrix. Mrs. Hamlin was present at the execution of the will. Mrs. Hamlin did call an attorney and state to him the request of Mrs. Camp that she wanted her will changed and how she wanted it written or what she wanted to do with her property. She is the executrix and the sole beneficiary under that will.

It is very clear that Mrs. Hamlin did not remove Mrs. Camp from the place where she was living to her home of her own volition, though she was willing to take and care for her. The suggestion was by a sister of Mrs. Camp, and she did not undertake to remove her or suggest that she go to her home until after she had discussed the matter with Mrs. Camp's brother, Hope Thomas, and Mr. Hamlin, her husband. Mr. Hamlin and Mr. Thomas both agreed, and Mrs. Hamlin found that Mrs. Camp

was willing to change the place in which she lived, and furthermore that she was not being properly cared for, and could not be if she remained there at that time. Her sister who lived with her brother, was ill and had to go to the hospital and there was no one left there to care for Mrs. Camp, who at that time was in rather poor physical condition.

As to the matter of having secured a lawyer to draft her will, that is fully explained by a guardian ad litem who had been appointed for Mrs. Camp in the conservator proceedings, the conservator and others, and that it was Mrs. Hamlin who first suggested it and wanted a lawyer called. This guardian ad litem recommended a different attorney on two occasions and Mrs. Camp had tried to contact them but had been unable to do so. Other people testified that Mrs. Camp stated she was anxious to change her will, and was going to do so.

As to the business affairs of Mrs. Camp, after the conservator was appointed, he stated most positively that all of the business affairs were initiated by him, after he had consulted with Mrs. Camp and found out the state of the situation as she understood it. There is nothing in the entire record that indicates that Mrs. Camp was easily influenced and vulnerable to persuasion or susceptible to the suggestions of Mrs. Hamlin other than a psychiatrical theory applicable to old people. While there is some evidence of a contradictory nature both ways in this regard, the jury heard the matter and certainly the jury and Court that heard and saw the witnesses testify are in a better position to know the strength of their testimony and the weight to be given it than we are from a reading of the record. Mrs. Hamlin

is the sole executrix named in the will and the beneficiary of the remaining estate.

In addition to the testimony offered by witnesses who are not related in any wise, the doctor, a general practitioner, who took care of Mrs. Camp from January 29, 1962 to March 31, 1962, and by 15 personal calls during that time, has detailed many conversations which he then had with her. He was not present at the date of her death, but all of these conversations occurred after the will had been made. He does not appear to be the least influenced by any of the parties to this lawsuit and he states positively that at that time she was a person of sound mind, understood matters of business, in his opinion, sufficient to dispose of her property in a reasonable way by will, and he explains the situation he found at that time in connection with her care by Mrs. Hamlin and said the death was caused by heart attack or by a clot in the lung. It is true that she was confined to the bed for some while before her death and that she had a sore on her heel and one on her buttock, and like any other old person she wanted to keep the position of her body in the bed in which she felt most comfortable, otherwise than that, the doctor states positively that she cooperated in every way and understood her condition and was mentally alert. He said:

"Q—Based on your observations and your testimony, do you have an opinion as to whether Mrs. Camp on the dates you observed her was of sound or unsound mind?

A—I do.

Q—And what is that opinion, Doctor?

A—I believe she was of sound mind.

Q—Based on your observations, about which you testified, do you have an opinion as to whether Mrs. Camp on the dates you observed her was sane or insane?

A—I do.

Q—What is that opinion, Doctor?

A—I believe she was sane.

Q—Doctor, based on your testimony, do you have an opinion as to whether Mrs. Camp had a sufficiently sound mind to know the natural objects of her bounty, that is, her near relatives such as brothers and sisters, as well as her niece, Mrs. Hamlin?

A—You asked me if I had an opinion?

Q—Yes.

A—I do.

Q—What is your opinion, Doctor?

I—I believe she did have.

Q—Now, Doctor, based on your testimony, do you have an opinion as to whether Mrs. Camp had a sufficiently sound mind to know and appreciate the meaning of the act of making her Last Will and Testament?

A—I do.

Q—What is that opinion, Doctor?

A—I believe she did.''

Furthermore, her attorney who wrote the will or was there when the will was executed, was in charge of the making of the will, though it was in the home of Mrs. Hamlin he did not hesitate to go over the whole matter

with Mrs. Camp and with the witnesses that had been called there by request to witness the will.

The conservator, Henry M. Beaty, Jr. was guardian ad litem in a certain matter pending in the Probate Court relative to Mrs. Camp's property and was appointed conservator on April 13, 1960, so that this conservator knew all about the business of Mrs. Camp and knew her relationship to all the parties and had been fully acquainted with the situation prior thereto with respect to the guardian ad litemship for some period of a month or more. From the time he was appointed conservator Mrs. Camp had all the advice it was necessary for her to have in connection with her property by virtue of Mr. Beaty's relationship in the capacity as guardian ad litem as well as in the capacity of conservator, and during this period of time he was managing her property was when this will was made.

After Mr. Beaty had been appointed conservator of her estate Mr. Erich William James, an attorney, was appointed guardian ad litem for Mrs. Camp in connection with sale of some of her property, and related his experiences and substance of his conversations with Mrs. Camp. He had been requested several times to prepare her will, but because of his legal relationship to her business affairs had suggested a Mr. Fisher, but Mrs. Camp could not contact him. His evidence is that Mrs. Camp was mentally capable to understand business affairs.

Many of the neighbors testified with respect to how this elderly lady lived and got along in the home of Mrs. Hamlin, how well she was treated, the conversations that they had with her, and the jury having heard all of this

testimony certainly could not escape the conclusion that Mrs. Camp wanted no independent advice other than what she had from her conservator, guardian ad litems and others that had had to do with the litigation in which she had been made a party and in which she herself had testified. She was present in Chancery Court and orally testified in the habeas corpus proceedings when Hope Thomas and the others were trying to take her away from Mrs. Hamlin. The old lady went before the Chancellor at that time. Her testimony is intelligent. Her testimony is not sentimental. It is a straightforward statement that she wanted to live where she was then living. The Chancellor saw and heard her testify and observed her at that time. He must have thought she knew what was best for her for he promptly denied the petition for habeas corpus.

Because of its significance in the light of this assignment of error No. 1, we here repeat the second paragraph in that assignment which correctly quotes the charge:

"Gentlemen of the jury, I charge you that even though the paper writing introduced in evidence has been prima facie established as a will by proof of its due execution, that nevertheless, it is not a valid last will and testament if it be established by sufficient proof at the time said paper writing was executed by Nannie Inez Camp that she was not of sound mind and disposing memory or that the said paper writing was procured by undue influence practiced and brought to bear upon her by any party."

But in other parts of the charge the Court has fully explained the nature of undue influence, its legal effect when exercised; its relationship to the issue of in-

capacity, and what "sound mind" means as related to business transactions. In his explanation relative to undue influence he said:

"The essential idea that underlies that sort of undue influence that vitiates a will is that the coercion or importunity has something sinister about it. * * * If one takes advantage of the affection or gratitude of another to obtain an unjust will in her favor, using her position to subdue and control the mind of the testatrix and substantially to deprive her of her own free agency, then the fact that gratitude or affection was a moving cause, makes it no less a case of undue influence. Whether such things existed in this case at the time of execution of the will or not, is a question of fact to be determined by you gentlemen after consideration of all of the evidence.

"Gentlemen of the jury, if you find that Nannie Inez Camp was of sound mind, within the terms of the law I have given you, at the time this paper writing was executed, and that no undue influence was practiced or brought to bear upon her, then your verdict should be that the paper writing dated December 16, 1961, offered in evidence, was the will of Nannie Inez Camp. If you find that Nannie Inez Camp did not have sufficient mental capacity to make a will at the time the said paper writing dated December 16, 1961, was executed, or that she was unduly influenced within the terms and meaning of undue influence, which I have stated to you, then in either of those events your verdict should be that the paper writing dated December 16, 1961, offered in evidence, is not the will of Nannie Inez Camp, and that the paper writing dated June 13, 1959,

is the last will and testament of the deceased, Nannie Inez Camp.''

Therefore, with a careful examination of the whole charge, pleadings, testimony and evidence it is obvious that here involved are some elderly people, most of whom are quite old, and the trial Judge was quite patient during the trial and fully explanatory in his charge to the jury.

The sister, Mary Thomas, who was sick, had to go to the hospital and her brother, Hope Thomas, with whom she was living at the time was fully aware that Mrs. Camp was going with Mrs. Hamlin to her home. In fact he was present when Mrs. Hamlin came for her and his own testimony is conclusive of the fact that he couldn't take care of her and that there was nothing to do with Mrs. Camp but for her to go at that time to the home of her said niece. Mary Thomas was 86 years old at the time she testified in this case. She, of course, testified in behalf of the first will and undertook to refute and deny what was said on some occasions by this niece and others, and the way her sister was treated in the home of Mrs. Hamlin.

Mrs. Kyde T. Morris, another sister, was 82 years old at the time she testified. There is also testimony by some of the in-laws in that family, but the great weight of the testimony that the Court saw and heard did not require the Court to charge with respect to the question of a confidential relationship, any further than he did in his explanation of where the burden of proof lay and why that there was no shifting of the burden of proof as it related to the proponents of Will No. 2, who were the

34 contestants of Will No. 1 or it shifting back to the proponents of Will No. 2 at any stage of the proof and trial, after its proven execution.

▇ Assignment of error No. II is as follows:

"Gentlemen of the jury, I charge you the law to be that upon the petition of a friend or relative, a conservator can be appointed for any person for any one of three reasons that render the person incapable of managing his or her own estate. These reasons are: Advanced age, or physical incapacity, or mental weakness, any one or a combination of the three. A conservatorship does not adjudicate or find a person insane or non compos mentis. Its purpose is to provide a means of conserving the estate of persons unable to look after their own property. Such a person is not per se, that is, in and of itself, or because of the conservatorship alone, incapable of making a valid will."

Unquestionably that is a correct charge as it relates to the question of conservatorship and that would most certainly present a question that a jury needed to have a very clear and concise explanation about it, otherwise the jurors might give too much emphasis to the appointment, particularly under the facts related here where there is a small farm involved and where the value of that property is enhancing day after day as a matter of common knowledge, and where the owner of the property is of such age that she could not physically attend to its cultivation etc. Therefore, what we have said in connection with assignment of error No. 1, we must agree with the Court that he was correct in giving this special request by the proponents of Will No. 2.

 What we have already said with respect to confidential relationship as we undertook to analyze the position of the Court respecting that matter, answers fully our feeling with respect to assignment of error No. III. Assignment of error No. III presupposes that the Court must charge on this question of confidential relationship. The Court did not have to so charge, and consequently since the Court did not have to charge it, it would have constituted an over emphasis on the relationship that did exist according to the proof. The special request which is the basis of assignment of error No. III is as follows:

"You are instructed that since the proponent, Mrs. Hamlin, was in a confidential relationship with the deceased, Mrs. Camp, and procured the alleged will dated December 16, 1961, to be drafted and executed, the law raises a presumption that Mrs. Hamlin exercised undue influence upon the deceased, Mrs. Camp, in procuring the execution of the will dated December 16, 1961, and the law places the burden of proof upon Mrs. Hamlin to show by the greater weight and preponderance of the evidence that she, Mrs. Hamlin, in fact did not exercise undue influence upon the deceased, Mrs. Camp, to procure the execution of the will dated December 16, 1961."

The same may be said with respect to assignment of error No. IV levelled at the failure of the Court to charge the special request which is the object of that assignment.

 With respect to assignment of error No. V levelled at the alleged error of the Court in refusing to charge contestant's special request No. 3, which is as follows:

"You are further instructed that the law places the burden of proof upon the proponent, Mrs. Mildred Inez Bivens Hamlin, to show by the greater weight or preponderance of the evidence that at the time Mrs. Camp signed the alleged will dated December 16, 1961, she was of sound mind and had the mental capacity to make a will. In determining whether or not Mrs. Camp had sufficient mental capacity to make a will on December 16, 1961, you will be guided by the instructions in that regard which I have previously given to you."

In reading the charge it is obvious that that assignment is fully covered in the charge and therefore properly refused.

With respect to assignment of error No. VI, which is a special request containing four paragraphs and covering more than one whole sheet of paper single spaced, there are several reasons why the Court was correct in refusing to charge that request. In the first place it is not in all respects a proper charge. In the second place all the substance of that request is embraced fully within the general charge of the Court, and third, for the same reasons as stated in consideration of assignment of error No. I, the Court acted properly in refusing to deliver the request to the jury.

For the same reasons set forth with respect to assignment of error No. I, we hold the Court correct in refusing to charge the Special Request which is the basis for assignment of error No. VIII, which is as follows:

"The Court further charges you, Gentlemen of the jury, that if you find that Mrs. Hamlin stood in a confidential relationship to Mrs. Camp, was a bene-

ficiary under the alleged will dated December 16, 1961, and procured that will to be drafted and executed, then the law presumes that Mrs. Hamlin exercised undue influence on Mrs. Camp to procure the alleged will dated December 16, 1961, and the law casts the burden of proof upon Mrs. Hamlin to show by the greater weight and preponderance of the evidence that she in fact did not exercise undue influence upon Mrs. Camp.''

Assignment of error No. VIII, while a correct statement of the law as it relates to the facts of the case, yet it is fully covered in the charge of the Court, and there is no necessity for the Court to repeat it. To do so was largely a matter of discretion and would not lend any special emphasis one way or the other had he charged it.

 In considering a will contest or contest of wills, we must remember that we are dealing with a proceeding in rem, and that the decision, is what has the testator legally done with his property. They are different from suits wherein there is a personal liability such as damage suits, insurance cases etc., and a large discretion must be exercised by the Court, not only in giving the charge but in his analysis of the proof.

''The proceeding is in rem; both parties are actors, and neither can, in the strict sense, be called a defendant, sued and made such against his will; * * *'' Phillips' Pritchard on Wills, Vol. 1, Sec. 354, pp. 331, 332; Winters v. American Trust Co., 158 Tenn. 479, 14 S.W.2d 740.

We have read the charge of the Court in this case three times and we have read these special requests that have been made by all the parties, including the requests

that were refused by the Court on which errors have been assigned. We are satisfied that the Court was entirely correct in his charge, and that we are therefore, compelled to overrule each assignment of error, affirm the verdict of the jury and judgment of the Court below.

In view of the fact that there are two wills, in view of the fact that they were both legally executed, in view of the fact there are two different named executors, and the duty was upon each of them to propound the respective wills wherein they were named executor and executrix, as did the Court with respect to cost in the trial below, taxed the cost against the estate of Mrs. Camp, we think that the proper procedure in this Court. The cost of the appeal to and in this Court will be charged and paid from the assets of the estate of Mrs. Camp and when paid, will constitute a proper charge against the estate to be credited in the executrix' final settlement.

We do not mean to say that this cost includes the broad statement ''of all expense'' so as to embrace any additional attorney fees which have accumulated by virtue of the hearing in this Court of Appeals. That question is not before us at this time and it would be premature for us to make an adjudication of such a matter in this opinion.

Decree will be entered in accord with his opinion and this cause will be remanded to the Circuit Court of Shelby County, Tennessee which Court will immediately, if it has not heretofore done so, remand the case to the Probate Court of Shelby County where the law will be complied with in respect to a decree of said Circuit Court.

Carney and Bejach, JJ., concur.