IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2007 Session

IN RE: ESTATE of MARY GERTRUDE RALPH, deceased.

PATRICIA BUTLER, CO-EXECUTOR of the ESTATE of MARY
GERTRUDE RALPH
v.
WAYNE RALPH

An Appeal from the Chancery Court for Tipton County
No. P2272    Dewey C. Whitenton, Chancellor

No. W2006-01619-COA-R3-CV - Filed April 25, 2007

This is a will contest.  The decedent was an 89-year-old woman with eight grown children.  In May 2004, the decedent was diagnosed with senile dementia.  Shortly thereafter, the trial court established a conservatorship for the decedent.  On August 2, 2004, the decedent executed a will that divided her estate equally among her children.  After the decedent died in 2005, the will was submitted for probate.  One of the decedent's sons contested the August 2004 will, asserting that the decedent lacked testamentary capacity when it was executed, and submitted for probate an earlier will whose terms favored him and disinherited three of the children.  After a bench trial, the trial court found that the decedent had the mental capacity to execute the August 2, 2004 will and admitted it for probate.  The will contestant now appeals, arguing that the trial court erred in placing the burden of proving testamentary capacity on him instead of placing it on the will's proponent, and that the trial court also erred in finding that the decedent had testamentary capacity to execute the August 2, 2004 will.  We affirm, finding that the issue turns primarily on the trial court's assessment of the credibility of the witnesses and that the evidence preponderates in favor of the trial court's finding that the decedent had testamentary capacity to execute the August 2, 2004 will.

**Tenn. R. App. P. 3; Judgment of the Chancery Court is Affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

J. Barney Witherington, IV, Covington, Tennessee, for Contestant/Appellant Wayne Ralph.

J. Houston Gordon, Covington, Tennessee, for Proponent/Appellee Patricia Butler, Co-executor of the Estate of Mary Gertrude Ralph.

## OPINION

Mary Gertrude Ralph ("Decedent") died on November 18, 2005, at the age of 89. She had three daughters, Florence Fee, Ellen Newman, and Appellee Patricia Butler, and five sons, Kem Ralph, Roger Ralph, Allen Ralph, Gayle Ralph, and Appellant Wayne Ralph. At the time of her death, the Decedent owned three tracts of real property amounting to approximately 233 acres of land, a large portion of which was farmland. In addition, the Decedent had about $40,000[1] in a checking account.

On May 10, 2004, a year and a half before her death, the Decedent was diagnosed by her treating physician of seven years, Dr. Travis L. Bolton ("Dr. Bolton"), as having senile dementia. Fifteen days later, Patricia Butler, along with three siblings, filed a petition to establish a conservatorship for the Decedent. The petition attached Dr. Bolton's medical report and affidavit, and asserted that the Decedent suffered from senile dementia and was unable to physically and mentally care for herself, her needs, or her estate. Subsequently, on June 25, 2004, the Decedent's eldest son, Wayne Ralph, along with his brother, Kem Ralph, filed a response to the petition, contesting the conservatorship and denying that the Decedent suffered from senile dementia. The trial court granted the conservatorship.

About three months later, on August 2, 2004, Wayne Ralph drove the Decedent to the office of attorney T.D. Forrester ("Forrester"). Years earlier, Forrester had assisted Decedent in the handling of the estate of her deceased husband. Forrester met with the Decedent and was given a copy of an earlier will, dated June 27, 2003 and purportedly signed by the Decedent.[2] The Decedent told Forrester that she did not recall signing the earlier will and that she wanted to prepare a new will. That afternoon, in the presence of Forrester and two attesting witnesses, the Decedent executed the August 2, 2004 will, which left all of her property, both real and personal, in equal shares to her eight children. The August 2, 2004 will designated daughter Patricia Butler and son Kem Ralph as co-executors of the Decedent's estate.

Several months later, in January 2005, the Semmes-Murphy Clinic confirmed Dr. Bolton's earlier diagnosis of senile dementia and also diagnosed the Decedent with Alzheimer's disease. Subsequently, on November 18, 2005, the Decedent died.

On December 22, 2005, Proponent/Appellee Patricia Butler ("Butler") filed a petition to open estate proceedings and to authorize and direct production of a copy of the Decedent's August 2, 2004

---

[1] In the appellate record, there is some testimony to the effect that a significant portion of the Decedent's money was transferred by one or more of the Decedent's children to another bank. No issue regarding these allegations is raised on appeal.

[2] The purported June 27, 2003 will provided that Kem Ralph be given the right to purchase 173 acres of the Decedent's real property for $1,000 per acre, that Wayne Ralph be given the right to purchase the remaining 60 or so acres, also for $1,000 per acre, and that the remainder of the estate be given to Kem Ralph, Wayne Ralph, Patricia Butler, Florence Fee, and Gayle Ralph. The purported will disinherited three of the decedent's children.

will. In the petition, Butler alleged that the original August 2, 2004 will had been lost, destroyed, or was being withheld by "others," and that the drafting attorney, Forrester, refused to disclose a copy of the will without court authorization. Butler asked that the trial court open the estate, direct Forrester to produce a copy of the August 2, 2004 will, and permit discovery, including the issuance of subpoenas *duces tecum*, to locate the original will. After a hearing, a copy of the August 2, 2004 will was submitted to the trial court.

Subsequently, on February 22, 2006, Butler filed a petition to admit the August 2, 2004 will for probate in solemn form and for appointment of an executrix. She attached a copy of the August 2, 2004 will and asserted that the original will remained in the control of either Wayne Ralph or his counsel. In addition, Butler noted that Kem Ralph, named co-executor in the August 2, 2004 will, was a convicted felon and alleged that he had previously converted assets of the Decedent and co-mingled them with his own in order to avoid a judgment creditor. Consequently, Butler asked that she be appointed sole executrix of the estate.

In response, on April 19, 2006, Contestant/Appellant Wayne Ralph filed a notice of contest, challenging the validity of the August 2, 2004 will. He noted that the Decedent was declared incompetent by medical professionals in the context of the conservatorship proceedings and that, during those proceedings, Butler had alleged that the Decedent was incompetent to handle her own affairs. As a result, Wayne Ralph claimed that Butler was estopped from asserting that the Decedent was competent to execute a Last Will and Testament on August 2, 2004. He argued that the August 2, 2004 will should not be admitted to probate because, at the time of execution, the Decedent was incompetent and suffering from senile dementia, and sought to admit for probate the earlier purported will, dated June 27, 2003.

A bench trial was held on May 25, 2006. At trial, Butler testified along with her brother, Roger Ralph, regarding the circumstances surrounding the petition for conservatorship that preceded the execution of the August 2, 2004 will. During their testimony, both witnesses indicated that, in May 2004, they became concerned that the Decedent's finances were being depleted by both Wayne Ralph and Kem Ralph. Butler said that "[c]hecks were being written on [the Decedent's] account" and "[h]er assets were depleting" to the point that they "were afraid that she wasn't going to have enough money to sustain her." In addition, the Decedent was having trouble remembering to take her medicine at the right times and in the appropriate amounts, and she was becoming disoriented.

Despite the basis for the conservatorship, Butler and Roger Ralph also testified that the Decedent continued to maintain an active life; she remained involved in her church, gossiped on the telephone with her friends, followed sports on the television, walked in her yard, talked about her flowers, and kept up with the status of her farm. Both witnesses stated that, in August 2004, the Decedent was aware of the properties she owned, knew all of her children by name, and was able to carry on a rational conversation.

The trial court also heard testimony from Forrester, the attorney who drafted the August 2, 2004 will, and the two attesting witnesses for that will. Forrester testified that, on August 2, 2004,

he met with the Decedent and her eldest son, Wayne Ralph. When he learned that the Decedent wanted to prepare a will, he asked Wayne Ralph to leave the room so that he could meet with her privately. Forrester said that he talked with the Decedent "basically all afternoon" regarding her will. Because she was elderly, he initially sought to determine whether she was competent and not laboring under any undue influence. They first "talked about her age, her date of birth, [and] her children." Forrester said that "she knew all of those." He also talked with her about her land and she "went through the various farm tracts that she owned." Following this discussion with the Decedent, Forrester testified, he went out and met with Wayne Ralph to confirm that what the Decedent had told him about her property was correct. Forrester then excused himself from the meeting and went to the courthouse to "review her land holdings to make sure that what she was telling was basically accurate." From his review of the courthouse records, Forrester said, "it was."

After that, Forrester asked the Decedent about her wishes for her property, and she indicated to him that she thought that was a "hard question." According to notes he took during their meeting, the Decedent told Forrester that she wanted to be fair and decided that she wanted to divide her estate equally. Forrester said that, initially, the Decedent showed some reserve about an equal division, commenting that some of her children had been "better" to her than others. Nevertheless, she ultimately decided that her children should share equally in her estate. Forrester told the trial court that the Decedent did not appear confused during their meeting, nor did she seem to be under any undue influence, and he concluded that she met the legal standard of competency to execute a will. On cross-examination, Forrester acknowledged that the Decedent told him she did not think she had any significant savings or investment accounts. When asked whether knowledge that she had $40,000 in a checking account at that time would have changed his opinion about the Decedent's competence, Forrester responded, "I don't think so in conjunction with all the other information that she gave about knowing her children, her family, [and] her real properties."

In addition, the trial court heard testimony from the two attesting witnesses for the August 2, 2004 will. Taylor Forrester, Forrester's son, testified that he spoke with the Decedent for about thirty minutes prior to her execution of the will, and that they discussed her family and particularly two of her grandchildren that he happened to know personally. He said that the Decedent was able to converse normally and rationally. In regards to her estate, he said, the Decedent told him that she "felt that this was the fair thing to do was to leave it equally to all her children." The second attesting witness, Margie Yarbro, was employed by Forrester's office in August 2004. She testified that, prior to execution of the August 2, 2004 will, the Decedent did not appear confused and was able to carry on a conversation in a rational manner. In regards to the provisions made in the August 2, 2004 will, she said that the Decedent commented that "she just wanted to do what was right."

The trial court next heard from Dr. Dennis W. Wilson ("Dr. Wilson"), a clinical psychologist. On August 31, 2004, at the request of Butler's attorney, Dr. Wilson conducted a clinical interview and administered a mini-mental status test to the Decedent, for approximately ninety minutes. Dr. Wilson testified that the Decedent's disease, senile dementia, is permanent and gradually worsens over time. He said that persons with senile dementia have "good days and bad days" and sometimes have "islands of lucidity," but described the lucid moments as temporary and unusual. When he

interviewed her in August 2004, Dr. Wilson testified, the Decedent was in the early stages of senile dementia. During the interview, the Decedent could identify her children by name, was able to converse in an intelligent and rational manner, and could form independent opinions. He concluded that the Decedent would have been legally competent to execute a will at the time of the clinical interview. Dr. Wilson acknowledged, however, that based on Dr. Bolton's May 2004 diagnosis, the Decedent would have executed the August 2, 2004 will under a mental state "reduced from her life-long level."

Wayne Ralph submitted into evidence the deposition of the Decedent's treating physician, Dr. Bolton. During his deposition, Dr. Bolton testified generally on the effects of senile dementia. Like Dr. Wilson, he indicated that a person with senile dementia could have "lucid" moments, but that these would be confined to a "very short time frame," i.e., minutes or hours depending on the degree of senility. He maintained, however, that even for a person with a medical background, it is difficult to decipher the lucid from the non-lucid moments unless there is a reference to "past experience with that individual." According to Dr. Bolton, a person who was unfamiliar with the background of the afflicted individual could not determine if that individual was thinking rationally at any given time.

As to the Decedent, Dr. Bolton testified that his diagnosis of senile dementia was based on his past experiences with the Decedent. He said that, from one visit to the next, she did not recall their discussions about her medicine and other matters in her everyday life and needed assistance in her daily affairs. Dr. Bolton noted that, in addition to having senile dementia, the Decedent was a mild diabetic, and he said that this also affected her mental capacity. Dr. Bolton concluded that, after May 2004, the Decedent was incapable of making a rational decision about her property or any of her affairs and would not be able to understand how her assets were divided in a will for any significant length of time. He acknowledged, however, that he had no way of knowing whether, on August 2, 2004, the Decedent was able to make rational decisions regarding the distribution of her estate.

Finally, the trial court also heard testimony from Wayne Ralph. Wayne Ralph testified that the Decedent's mind began to deteriorate in January 2004. On the day that he drove the Decedent to Forrester's office, he said, the Decedent was "try[ing] to make her mind sound good or look good, but her mind wasn't really too good." When he was driving the Decedent to Forrester's office, he asserted, she did not know why she was going there, and after their meeting, she appeared disoriented, "like she didn't know really where she was." On cross-examination, Wayne Ralph conceded that, during the conservatorship proceedings, the Decedent could still identify her children and her properties and make decisions regarding them.

Upon conclusion of the proof, the trial court issued a ruling from the bench. The trial judge stated, in relevant part:

> Ladies and Gentlemen, in this case the Court finds by a preponderance of the
> credible evidence that the decedent, Mary Gertrude Ralph, executed a valid Last Will

and Testament on August 2, 2004 and that this will should be entered for Probate in solemn form as her Last Will and Testament.

The Court further finds that a preponderance of the evidence does not contradict the presumption of testamentary capacity that arises from the undisputed fact that the will was duly and validly executed on August 2, 2004.

Tennessee law is clear that a person may be capable of disposing of their property and estate by will and yet be incapable of managing their property and estate. The fact that a person may have been under a guardianship or conservatorship is not conclusive evidence that the person lacked the required mental capacity to make a valid will.

The Court determines that the decedent Mary Gertrude Ralph was capable of recollecting her property and estate; the manner of distributing that property and estate; and the object of her bounty.

Thus, the trial court found that the Decedent had testamentary capacity to execute the August 2, 2004 will. On June 12, 2006, the trial court entered a final order memorializing its oral ruling and admitting the August 2, 2004 will for probate in solemn form. From this order, Wayne Ralph now appeals.

On appeal, Wayne Ralph argues that the trial court presumed testamentary capacity and placed the burden on him to show lack of capacity to execute the August 2, 2004 will, and that the trial court also erred in finding that the Decedent possessed the requisite mental capacity to execute the August 2, 2004 will.

Because this case was tried without a jury, our standard of review is *de novo* upon the record, according a presumption of correctness to the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (2000). The trial court's legal conclusions, however, are reviewed *de novo* and accorded no presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge has the opportunity to observe the witnesses in their manner and demeanor and is in a better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). As such, "the weight, faith, and credit to be given the witnesses' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight" on appeal. *Whitaker*, 957 S.W.2d at 837; *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997).

In this appeal, Wayne Ralph asserts that the trial court erred procedurally in allocating the burden of proof and in its substantive finding that the Decedent had the requisite mental capacity to execute the will in question. We address first the evidence supporting the trial court's substantive finding.

To execute a valid will, the testator's mind "must be sufficiently sound to enable him or her to know and understand the force and consequence of the act of making the will." *In re Estate of Elam*, 738 S.W.2d 169, 171 (Tenn. 1987). The testator must be able to comprehend " 'the property being disposed of, the manner of its distribution, and the persons receiving it.' " *In re Estate of McCord*, No. M2003-00175-COA-R3-CV, 2004 WL 508479, at *6 (Tenn. Ct. App. Mar. 12, 2004) (quoting *Brewington v. Sanders*, No. 01A-01-9301-CV-00002, 1994 WL 189626, at *4 (Tenn. Ct. App. May 18, 1994)).

In examining whether a testator had testamentary capacity to execute a valid will, the "testator's mental condition 'at the very time of executing the will is the only point of inquiry; but evidence of mental condition both before and after making the will, if not too remote in point of time, may be received as bearing upon that question.' " *Id.* (quoting *Harper v. Watkins*, 670 S.W.2d 611, 628-29 (Tenn. Ct. App. 1984)). Further,

> [w]hile evidence regarding factors such as physical weakness or disease, old age, blunt perception or failing mind and memory is admissible on the issue of testamentary capacity, it is not conclusive and the testator is not thereby rendered incompetent if her mind is sufficiently sound to enable her to know and understand what she is doing.

*In re Estate of Elam*, 738 S.W.2d at 171-72 (citing *American Trust & Banking Co. v. Williams*, 225 S.W.2d 79, 83 (Tenn. Ct. App. 1948); 79 Am. Jur. 2d *Wills* § 77 (1975)). "The mere fact that a person may have been under judicially appointed guardianship or conservatorship does not constitute [a] per se adjudication that the person lacked [the] capacity to make and execute a valid will." *Green v. Higdon*, 870 S.W.2d 513, 522 (Tenn. Ct. App. 1993). "The law does not require that persons must be able to dispose of their property with proper judgment and discretion in order to make a will . . . . It is sufficient that they understand what they are [doing]." *Thomas v. Hamlin*, 404 S.W.2d 569, 574 (Tenn. Ct. App. 1964).

In the instant case, Wayne Ralph argues that the Decedent was mentally incompetent before, during, and after executing the August 2, 2004 will. For this proposition, he relies on Dr. Bolton's testimony and diagnosis, as well as the fact that the Decedent was under a conservatorship at the time of execution. He also notes that attorney Forrester testified that the Decedent was uncertain of exactly how she wanted to distribute her estate when she arrived at his office, that she did not recall signing an earlier will, and that she did not believe she had significant savings despite having $40,000 in her bank account.[3] Finally, Wayne Ralph notes that, four months after execution of the will, the Decedent was also diagnosed with Alzheimer's disease. From all of this, he argues that the preponderance of the evidence shows that the Decedent lacked testamentary capacity at the time she executed the August 2, 2004 will.

---

[3]Wayne Ralph also argues for the first time on this appeal that the Decedent incorrectly dated the August 2, 2004 will, asserting that she dated the will the "20 day of August, 2004." In response, Butler asserts that the handwritten date is "2d day of August, 2004," not "20 day of August, 2004." This issue is without merit.

In order to reach this conclusion, Appellant Wayne Ralph ignores the virtual avalanche of evidence, obviously deemed credible by the trial court, supporting the finding that the Decedent in fact had the requisite testamentary capacity when she executed the August 2, 2004 will. Apart from the testimony of interested witnesses such as Butler and Roger Ralph, one disinterested witness after another testified that the Decedent conversed easily and rationally, knew about her children and her land holdings, pondered her decisions of how to leave the property to her children in her will, and underscored her desire to be fair. Indeed, attorney Forrester testified at length about the careful steps he took to ensure that the Decedent had the requisite capacity and had accurate information regarding her real property, checking courthouse records and even confirming the information with Wayne Ralph himself. Indeed, Wayne Ralph drove the Decedent to Forrester's law office for the express purpose of making a will. In his testimony, Wayne Ralph claimed that, on the day the will was executed, his mother's mind "wasn't really too good." If in fact he had those doubts, they were not expressed to Forrester at the time, and it appears were not voiced at all until after he learned the contents of the will his mother executed.

The trial court's finding is bolstered further by the testimony of the clinical psychologist, Dr. Wilson, who assessed the Decedent's mental status shortly after the will was executed. Dr. Wilson's assessment is not undercut by the testimony of the treating physician, Dr. Bolton, who corroborated Dr. Wilson's testimony that persons suffering from senile dementia have lucid intervals and acknowledged that he had no way of determining the Decedent's testamentary capacity on August 2, 2004.

Given the substantial weight of the credible evidence supporting the assertion that the Decedent had the requisite testamentary capacity, even assuming that Butler had the burden of proving capacity, that burden was clearly met. Therefore, we find it unnecessary to address the issue raised on appeal regarding the allocation of the burden of proof, and find that the evidence preponderates in favor of the trial court's conclusion that the Decedent had the testamentary capacity to execute the August 2, 2004 will. Accordingly, we find no error in the trial court's decision to submit the August 2, 2004 will into probate.

The decision of the trial court is affirmed. Costs of this appeal are assessed against Contestant/Appellant Wayne Ralph, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE