**In re ESTATE OF Hazel Keck MAYES, Deceased.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

March 30, 1992.

Application for Permission to Appeal Denied by Supreme Court June 29, 1992.

Lawrence P. Leibowitz, Leibowitz and Cohen, Knoxville, for plaintiffs-appellants, heirs of Hazel Keck Mayes, deceased.

Charles G. Taylor, III, McDonald, Levy & Taylor, Knoxville, for defendant-appellee, Allen J. Ware, Jr., Executor, Estate of Hazel Keck Mayes, and Beneficiaries under last will and testament of Hazel Keck Mayes.

Lewis R. Hagood, Arnett, Draper and Hagood, Knoxville, for J. Kyle Lynch, beneficiary under last will and testament of Hazel Keck Mayes.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiffs[1] from the Chancellor's denial of their petition to set aside an order admitting the Will of Hazel Keck Mayes, deceased, to probate in solemn form.

The pertinent facts are as follows:

Mrs. Mayes was born on 4 March 1904 in Claiborne County, Tennessee. She moved from Claiborne County to Knoxville, Ten-

---

1. Plaintiffs are some sixty-five nieces and nephews of Hazel Keck Mayes who would have been heirs of Mrs. Mayes if she had died intestate.

nessee, and married George T. Mayes on 7 November 1920. No children were born of their marriage.

In 1956, prior to her husband's death, Mrs. Mayes began suffering from increased nervousness that caused her to become violent. Her husband had her hospitalized at Eastern State Psychiatric Hospital from 9 August 1956 to 8 September 1956. She was diagnosed as having "Schizophrenic Reaction, Acute Undifferentiated Type" from which the "patient recovered spontaneously."

Mr. Mayes died in 1964 and Mrs. Mayes thereafter lived alone and cared for herself in the family home in Knoxville. In June of 1968, she apparently suffered from a psychotic reaction and voluntarily hospitalized herself for two days at Eastern State Psychiatric Hospital from 24 June 1968 until 26 June 1968, when she was discharged against medical advice. Three days after returning home, she had another psychotic reaction and was again admitted to Eastern State, where she stayed for some two months. During this hospitalization, Mrs. Mayes was determined to be "competent," but subject to becoming "agitated and disturbed ... if she was under stress." In August 1968, she was furloughed to her sister and was discharged from Eastern State on 13 September 1968. After being discharged from Eastern State on 13 September 1968, Mrs. Mayes remained at home with no apparent problems for approximately a year.

While hospitalized on this third occasion, two of her nieces filed a petition in the Chancery Court for Knox County to have a conservator appointed for Mrs. Mayes. On 9 July 1968, the court appointed a Knoxville attorney, Wayne Parkey, as conservator. At the time of Mr. Parkey's appointment, Mrs. Mayes had assets of some $206,000.00 and a monthly income of less than $1,000.00. Through Mr. Parkey's management of her assets and the management by Mr. Allan J. Ware, Jr., her successor conservator, Mrs. Mayes enjoyed a comfortable income and her assets substantially appreciated in value during the twenty-two years the conservatorship was in

effect. Following her death in 1990, the conservator's final report showed total assets in her estate of more than $622,000.00.

On July 29, 1969, a year after the conservatorship was established, Mrs. Mayes asked the Court to terminate the conservatorship and give her possession and control of her estate. The court ordered Mrs. Mayes' guardian, C.R. McClain, to conduct an investigation into the competency of Mrs. Mayes and to arrange for a psychiatric evaluation. On 12 August 1969, the court found that Mrs. Mayes' mental condition had substantially deteriorated and that she had been recommitted to Eastern State Psychiatric Hospital. The court ordered that termination of her conservatorship was "postponed indefinitely pending the complete mental recovery of ... Mrs. Hazel Keck Mayes." The conservatorship continued until the date of her death.

One week prior to the court order postponing termination of her conservatorship Mrs. Mayes had again voluntarily had herself admitted to Eastern State, on 6 August 1969. She was diagnosed as "incompetent" when she was admitted and at her discharge on 22 October 1969, she was determined to be "in remission." For some five years thereafter, she received medication and periodic out-patient treatment. During the course of her out-patient treatment, she was noted as "getting along," "adjusting well," "no fears, worries", "no disturbing thoughts," and she was "eating and sleeping good." On 9 August 1974, Mrs. Mayes' case was referred to Ross McNabb Medical Center for aftercare and on 13 August 1974 Mrs. Mayes's file at Eastern State Psychiatric Hospital was marked "Case Closed." Eastern State Psychiatric Hospital described Mrs. Mayes' condition on the referral that was sent to the Ross McNabb Mental Health Center as follows: "This white female, widowed—lives alone,—goes to church and town and does own house work and cooking. She has been seen by Dr. E.H. Rayson on a three month's schedule and is judged to be adjusting well."

This record contains no evidence that she had any further emotional or mental problems after 13 August 1974 until her death on 19 January 1990.

On 29 August 1983, Mrs. Mayes executed what became her last will and testament. She had no children and all of her nine brothers and sisters were deceased at the time of the execution of her will. Her only heirs were nephews and nieces, grand-nephews and grand-nieces, and great grand-nephews and great grand-nieces. At the time of her death in 1990, her heirs consisted of thirty nephews and nieces, thirty-seven grand-nephews and grand-nieces, one great grand-nephew, and two great grand-nieces for a total of seventy heirs. In the 29 August 1983 will, Mrs. Mayes set aside $20,000.00 from her estate to be put in a perpetual trust for the "beautification, ornamentation, upkeep, maintenance, expansion or enlargement" of three cemeteries in Claiborne County, Tennessee, including the cemetery where her husband was buried and where she, too, wished to be buried. Mrs. Mayes bequeathed her household furnishings and appliances in equal shares to six of her nieces, all of whom where the daughters of Mrs. Mayes' deceased sister, Retha Keck Carey.

Mrs. Mayes bequeathed all of the remainder of her estate, including the proceeds from the sale of her home in Knoxville and all of her financial assets that made up the majority of the conservatorship to nineteen different relatives. These relatives were to receive a fractional share of the remainder of her estate as set out below:

| | |
|---|---|
| Ivie Carey | 6.5 percent |
| Leotha Carey | 4.9 " |
| Wayne Carey | 6.5 " |
| Ima Franklin | 6.5 " |
| Patry Franklin | 6.5 " |
| Cidney Keck | 3.3 " |
| Clive Keck | 3.3 " |
| Marvin Keck | 3.3 " |
| Uple Keck | 2.6 " |
| Keither Luttrell | 8.2 " |
| Doll Lynch | 13.1 " |
| Kyle Lynch | 6.5 " |
| Cama Maples | 2.6 " |
| Neotha Noe | 2.6 " |
| Violet Peters | 3.3 " |
| Ora Simmons | 9.8 " |
| Shirley Simmons | 6.5 " |
| Maude Wallace | 0.7 " |
| Connie Whittenberg | 3.3 " |
| | 100.00 " |

All of the nineteen named legatees were relatives of Mrs. Mayes and all but three were heirs who would have inherited from Mrs. Mayes had she died intestate. The three who would not have inherited from her were Kyle Lynch, a grand-nephew of Mrs. Mayes, and Maude Wallace and Connie Whittenberg, two grand-nieces. These three would not have taken if Mrs. Mayes had died intestate since their parents were still alive and would have been entitled to inherit from Mrs. Mayes. All of the relatives who were named as beneficiaries under Mrs. Mayes' will lived either in Knoxville or within a radius of approximately sixty miles of Knoxville. Most of the heirs who were not named as beneficiaries lived outside of the East Tennessee area. Of the twenty nieces and nephews who are plaintiffs in this suit, over half of them reside outside the State of Tennessee.

In her will, Mrs. Mayes specifically noted that she was not including all of her heirs and relatives as beneficiaries in the will by stating, "I am not unmindful that I have other relatives not herein named."

Mrs. Mayes' will named her conservator, Wayne Parkey, as executor of the will with Allan J. Ware, Jr. designated as successor executor if Mr. Parkey was unwilling or unable to serve.

Mrs. Mayes died 19 January 1990 at the age of eighty-five. Thereafter, Mr. Parkey, who was at the time eighty-nine years old filed a notice with the Probate Division of the Knox County Chancery Court stating that he was respectfully declining to serve as executor of her estate, and, pursuant to the terms of the will, Allan J. Ware, Jr., who had been serving as Mrs. Mayes successor conservator for a number of years, was appointed executor.

On 21 February 1990, Mr. Ware presented the 29 August 1983 will to the court with a petition asking that the will be admitted to probate in solemn form. The petition advised the court that, because of the large number of heirs, there was a possibility that the will might be contested

and, as a result, it was requested that the court probate the will in solemn form. The petition stated, in part, as follows:

> The Testatrix was at the time of her death possessed of a large estate of which she undertook to make disposition by the aforesaid testamentary paper. Testatrix was a widow and left no issue. Her heirs at law are certain nephews and nieces as shown by list attached hereto.... With the possibility of the aforesaid instrument being questioned, your Petitioner was advised to have said instrument probated in solemn form; and Petitioner in pursuance of that resolve brings this petition and presents said Will and requests that it be so proven and established before your Honor as the Last Will and Testament of the Testatrix. Your Petitioner prays that your Honor set a day for said hearing and that notices or processes be issued and served upon each and all of the foregoing heirs at law requiring them to be present upon the day named by your Honor and to present to your Honor any and all objections they may conceive may be made in protesting the probating of the aforesaid Will.

After filing the petition seeking probate in solemn form, each of the seventy heirs of Mrs. Mayes was personally served with process. It took approximately two months to locate all of the heirs and have them personally served, not only with process but also with a copy of the will of 29 August 1983 and a copy of the petition seeking probate in solemn form.

In addition, an order was obtained from the Probate Court authorizing the executor to advertise in a local newspaper for any unknown heirs that might have escaped personal service of process. The newspaper notice appeared in the *Knoxville Independent* on 30 April 1990, 7 May 1990, 14 May 1990, and 21 May 1990.

All of Mrs. Mayes heirs, including the twenty plaintiffs in the instant suit, were personally served with process and notified of the probate in solemn form. After the hearing on 20 July 1990 at which many of the plaintiffs appeared, the court entered an order of probate dated 6 August 1990 in which it was noted that "all of the heirs at law and next of kin of ... Hazel Keck Mayes ... have been duly notified by process and notice of the tendering of said Will for probate in solemn form upon said day and date and in this Court; and no one of the number of the next of kin appear[ed] and protest[ed] against the probating of said Will." Two of the three attesting witnesses to the 29 August 1983 will had appeared and testified at the hearing. However, since the third attesting witness was not present, the court recessed the hearing until 3 August 1990 so that the third witness could be subpoenaed. On 3 August 1990, after it was determined that the third witness could not be found, the court noted that "no one [was] present contesting the probating of said Will, and that all the known heirs of Hazel Keck Mayes had been notified according to law." The court entered two orders on 6 August 1990, declaring the will of 29 August 1983 to be the last will and testament of Mrs. Mayes and admitting the same into probate in solemn form.

Thereafter, on 15 August 1990, fifteen of Mrs. Mayes nephews and nieces filed a "Motion to Vacate Judgment or Obtain New Hearing on Probate In Solemn Form And to Object to Probate of the Alleged Will," seeking to have the court vacate its previous orders and to transfer the case to the Circuit Court for a trial on the issue of Devisavit Vel Non.

Some nine days after the order admitting the will to probate in solemn form was entered, plaintiffs filed a motion pursuant to Tennessee Rules of Civil Procedure 59 and 60.02(3), seeking to have the court vacate and set aside the judgment, or for a new trial. In their motion, plaintiffs alleged that Mrs. Mayes was "mentally incompetent and incapable of managing her own affairs," that a conservator had been appointed for her estate and that she was under a conservatorship at the time she made the will, and up until her death. They alleged that Mrs. Mayes lacked testamentary capacity at the time she made her will on 29 August 1983 and further alleged

that, because Mrs. Mayes lacked testamentary capacity, her will was void. They insisted that their delay in contesting the will was due in part to the failure of the conservator/executor to disclose all material facts in the petition to probate the will.

Plaintiffs sought a rehearing of the probate in solemn form; asked the court to vacate and set aside the final order probating the will of Mrs. Mayes; to declare that the will of 29 August 1983 was void; that Mrs. Mayes be declared to have died intestate by reason of the "void will;" and to transfer the case to the Circuit Court for trial on the issue of Devisavit Vel Non.

On 8 March 1991, plaintiffs filed an amendment to add five more of Mrs. Mayes' relatives as plaintiffs and attached numerous medical records relating to Mrs. Mayes' four hospitalizations at Eastern State Psychiatric Hospital. Mrs. Mayes' last hospitalization occurred more than twenty years prior to her death in January 1990. In this amended petition the plaintiffs also alleged that the probate in solemn form was essentially a default judgment and moved to have it set aside pursuant to Tennessee Rules of Civil Procedure 55.02 and 60.02 on the basis of excusable neglect.

On 12 March 1991, a hearing was had upon the plaintiffs' petition. At this hearing, plaintiffs' attorney attempted to argue the issue of Mrs. Mayes' mental competency at the time she made the will. However, the court ruled that, since the final order had been entered admitting the will of 29 August 1983 to probate in solemn form, the only issue which the court would consider was whether or not the executor had committed fraud in procurement of the order admitting the will into probate in solemn form.

The court gave the plaintiffs an opportunity to present any evidence they felt was relevant to their motion. Plaintiffs called the executor, Allen Ware, and asked him a number of questions regarding why, during the probate of the will, he had not raised the issue of Mrs. Mayes' conservatorship and her mental problems which had occurred some twenty-five years earlier. Mr. Ware answered that, since he had tak-en over the conservatorship in 1988, he had spent an hour a week with Mrs. Mayes and that, in his opinion, there was nothing wrong with her in her later years except that she was often lonely.

Plaintiffs then called Coney Fortner, a niece of Mrs. Mayes and one of the plaintiffs in the instant suit. Ms. Fortner testified that she and the other plaintiffs had received notice of the probate in solemn form, that they had discussed it among themselves, and that, prior to the hearing on 20 July 1990, they had contacted an attorney in Tazewell, Tennessee, regarding the pending probate. The attorney in Tazewell reviewed the probate documents and they then consulted with him a second time and that, prior to the 20 July 1990 hearing, they consulted with another attorney who was located "off Broadway" in Knoxville, and that this second attorney also declined to take their case and referred plaintiffs to their present attorney, Mr. Lawrence Leibowitz. From the record it seems that the plaintiffs made no attempt to contact Mr. Leibowitz prior to the 20 July 1990 hearing or the 3 August 1990 hearing. While the final order of probate was entered 6 August 1990, the plaintiffs did not retain Mr. Leibowitz until approximately 13 August 1990.

Following the hearing, the court, in a memorandum opinion, determined that Mr. Ware had properly carried out his duties as executor by seeking the probate of Mrs. Mayes' will in solemn form and that all of the heirs had been notified of the pending probate and they had been given ample opportunity to come forward and raise any objections to the probate of the will. In fact, the court found that "many of them did appear [at the hearing] and no one objected." The court further found that Mr. Ware had no obligation during the probate to raise the issue of Mrs. Mayes' past mental problems and that his decision not to raise the issue was not evidence of fraud. The court stated:

> Based upon the evidence the Court has heard and the law as it exists, the Court concludes that there has not been any fraud in the procurement merely because

a fact about the testator's past mental condition was not alleged. There is no question raised about the proper notification to all the interested parties. All of them had a right to appear and say "I object to the probate of this will." Had they said that, the will would not have been probated. Many of them did appear and no one objected. Some of them sought legal advice, as has been shown by the proof today, but still failed to appear and object.

On 13 May 1991, the trial court entered a final order incorporating its earlier memorandum opinion and overruling the plaintiffs' motion to vacate the order of probate. "The Court, after reviewing the pleadings, hearing the testimony of certain witnesses and the arguments of counsel, and considering the record as a whole, did thereupon find and conclude that the motion as amended was not well taken and should therefore be overruled." Plaintiffs have perfected their appeal to this Court.

The first issue presented by the plaintiffs is:

Did the Chancery Court have the power and jurisdiction to set aside a probate in solemn form or vacate a judgment of probate in solemn form if application for same is made to the court before the expiration of thirty (30) days from the date of the order of probate in solemn form?

In *Jennings v. Bridgeford*, 218 Tenn. 287, 292, 403 S.W.2d 289, 291 (1966), the Supreme Court stated: "It is settled in this State, that the judgment probating a Will in solemn form cannot be questioned except by a bill in Chancery attacking the judgment for fraud in its procurement."

"When a will has been probated in solemn form, no question of its invalidity can thereafter be raised, except by a bill filed to set aside the judgment for fraud in its procurement, as any other judgment may be set aside." *Roland v. Weakley*, 208 Tenn. 444, 446, 346 S.W.2d 578, 579 (1961) (quoting *State v. Lancaster*, 119 Tenn. 638, 105 S.W. 858 (1907)).

The trial court in the instant case found: "[T]here ... [had] not been any fraud [by

the executor] in the procurement merely because a fact about the testator's past mental condition was not alleged [in the petition seeking probate]."

■■■ The essential facts which must be alleged in a petition for probate are: 1) the date of death of the testator, 2) that he/she was a resident of the county at the time of his/her death, 3) that at the time of his/her death, he/she had a will, a copy of which should be attached to the petition, 4) the right of the proponent as executor, devisee, or legatee, to file the petition, and 5) the names of the surviving spouse, heirs, and the next of kin of the deceased. *Pritchard on Wills and Administration of Estates,* § 328 at 431 (4th ed. 1983). Additionally, the petition "should pray for process notifying all persons interested to appear and witness the proceeding and take part in it if they see fit, and that the will be proved in solemn form." *Id.* at 431. In the instant case, the executor included all of the essential facts in his petition seeking to probate Mrs. Mayes' will in solemn form. There is no requirement that the executor include any other facts. It cannot seriously be contended that the executor committed extrinsic fraud by failing to include facts regarding the mental condition of the testatrix in the petition for probate in solemn form.

In *Jennings v. Bridgeford*, the plaintiff, an heir of the deceased who was not a beneficiary under the will filed suit in Chancery Court for Shelby County seeking to set aside the probate. Plaintiff claimed that defendants had committed fraud by presenting the will for probate in solemn form, "knowing that the testatrix did not have the required mental capacity to make a Will." 218 Tenn. at 289, 403 S.W.2d at 290.

The trial court had dismissed the plaintiff's suit and the Supreme Court affirmed, holding that, since there had been another legal proceeding in which the allegations regarding the testatrix's alleged incompetency were made public, the failure of the executor to include this information in the petition to probate the will in solemn form

could, at best, only be considered intrinsic fraud. 218 Tenn. at 292–93, 403 S.W.2d at 291. The Court further stated:

[In order to set aside a probate in solemn form, the] fraud in the procurement must be found extrinsic or collateral to the question examined and determined in the former action in which the alleged judgment was rendered....

In the case at bar, the fraud, if any, is clearly intrinsic since it was at issue in [a prior proceeding]. Complainant charges that the judgment [of probate] was procured by fraud in that the executor sought to probate the Will while concealing the "fact" that the testatrix was mentally incompetent at the time she executed the 1961 Will. The question of mental incapacity [was] specifically tried [in a previous hearing].... It is no grounds for attacking a judgment [of probate] that the defendant has concealed some evidence of a fact [previously] in issue.

*Jennings v. Bridgeford*, 218 Tenn. at 292–93, 403 S.W.2d at 291.

■ In this case, the issue of Mrs. Mayes' competency was raised in the conservatorship proceeding in 1968. This proceeding was public knowledge. We are therefore of the opinion that the holding in *Jennings* is on all fours with the facts in this case. Therefore, even if the executor could be faulted for not including the facts of Mrs. Mayes' prior mental problems in the petition to probate the will in solemn form, then his actions could at best be only considered intrinsic fraud. Under *Jennings*, his actions do not provide a basis for setting aside the probate in solemn form.

■ Finally, there is no evidence in this record to show that the plaintiffs or the court would have acted any differently had those facts been raised in the petition. The court stated that it was well aware of Mrs. Mayes' conservatorship at the time of the probate hearings on 20 July 1990 and 3 August 1990, since the Chancellor was at the time of the conservatorship the Clerk and Master of the Knox County Court and had received and filed accountings of the conservator from time to time. Mrs.

Mayes' conservatorship proceedings, which included information about her prior mental condition, were a matter of public record, even though those facts were not raised in the petition for probate in solemn form.

The plaintiffs, prior to the 20 July 1990 hearing, had been to see an attorney in Tazewell, Tennessee, on at least two occasions and one time to see an attorney whose office was located "off Broadway" in Knoxville. There is nothing in this record that shows in any way that the plaintiffs would have done anything differently had the petition for probate contained a reference to the facts concerning Mrs. Mayes' mental condition some fourteen years prior to the execution of the will. We think it is clear that the record shows that the plaintiffs did not timely object to the probate of the 29 August 1983 will because they did not attempt to engage an attorney who would agree to take the case until after the hearings of 20 July and 3 August 1990. The plaintiffs were not prejudiced by the fact that the executor did not make any reference to the mental problems suffered by Mrs. Mayes or to the 1968 conservatorship. This issue is without merit.

■ Plaintiffs also insist that the trial court incorrectly determined that they were not entitled to set aside the previous order of probate under either Rule 55 or Rule 60 of the Tennessee Rules of Civil Procedure. In their amended complaint, plaintiffs insist that their failure to object to the will should be viewed as a "default judgment" and that because the default was taken against them as a result of their "excusable neglect," the order for probate in solemn form should be set aside pursuant to Rule 55 and Rule 60 of the Tennessee Rules of Civil Procedure. These Rules do allow for relief from certain judgments. *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn.1976). Such relief "lies within the sound discretion of the trial court." *Brumlow v. Brumlow*, 729 S.W.2d 103, 106 (Tenn.App.1986). Additionally, relief will not be granted unless the moving parties can show that they had a valid reason for

not timely objecting to the final order which they seek to set aside and that they had a "meritorious defense" which, if heard, could have precluded the entry of the order. *Patterson v. Rockwell International*, 665 S.W.2d 96, 100 (Tenn.1984). Here, plaintiffs failed to meet either of this criteria.

■ There is no evidence that the plaintiffs' failure to timely object to the probate of Mrs. Mayes' will was due to either (1) "mistake, inadvertence, surprise or excusable neglect." Tenn.R.Civ.P. 60.02. Plaintiffs admit their failure to timely object to the probate of the will was the result of their decision to not promptly hire an attorney to file the objection after two other attorneys whom they had contacted had refused to take their case. One of the plaintiffs, Coney Fortner, testified that the second attorney the plaintiffs contacted declined to take their case at least "a few days" prior to the probate hearing on 20 July 1990. Plaintiffs waited approximately a month until 13 August 1990 before contacting another attorney. During this period of time, two separate hearings were had on the petition for probate, one on 20 July and the other on 3 August 1990. At least some of the plaintiffs were present at both of these hearings, and at neither of the hearings did any of the plaintiffs state they were objecting to the probate of Mrs. Mayes' will.

Following a hearing on the instant petition, the trial court stated as follows:

> All of them had a right to appear and say "I object to the probate of this Will." Had they said that, the will would not have been probated. Many of them did appear and no one objected. Some of them sought legal advice, as it has been shown by the proof today, but still failed to appear and object.

■ Even if it could be shown that the plaintiffs' actions in failing to object to the probate of the will amounted to excusable neglect, they must still show they had a meritorious claim that would justify the reopening of the probate. *Patterson v. Rockwell Internat'l*, 665 S.W.2d at 100. Plaintiffs contend that Mrs. Mayes was

incompetent to make a will in 1983 because she had been under a conservatorship since 1968 and that she had suffered mental problems which had required four hospitalizations between 1956 and 1969. We are of the opinion, however, that neither of these contentions rise to the level of meritorious claims entitling the plaintiffs to relief from the order of probate.

■ It is clear that simply because a person is under a conservatorship, they are not incompetent to make a will. The mere fact that a person may have been under a judicially appointed guardianship or conservatorship does not constitute a per se adjudication that the person lacked the mental capacity to make and execute a valid will. *Thomas v. Hamlin*, 56 Tenn.App. 13, 404 S.W.2d 569 (1964). This Court, in *Thomas*, stated:

> A conservatorship does not adjudicate or find a person insane or non compos mentis. Its purpose is to provide a means of conserving the estate of persons unable to look after their own property. Such a person is not per se, that is, in and of itself, or because of the conservatorship alone, incapable of making a valid will.

56 Tenn.App. at 34, 404 S.W.2d at 578.

In *Harper v. Watkins*, 670 S.W.2d 611 (Tenn.App.1983), this Court stated: "Unless the deceased has already been adjudicated insane at the time of the execution of a will, the burden is always upon the one who alleges an unsound mind to prove it. . . . *Even the existence of a guardianship or conservatorship is not per se an adjudication of an unsound mind, that is, an adjudication of mental incapacity to execute a will.*" *Id.* at 628 (quoting *Tucker v. Jollay*, 43 Tenn.App. 655, 311 S.W.2d 324 (1957)). Simply because Mrs. Mayes was under a conservatorship did not make her incompetent to execute a will in 1983.

■ We are also of the opinion there is no merit to the second argument asserted by the plaintiffs that because Mrs. Mayes was hospitalized for mental problems on four occasions between 1956 and 1969, she must be considered incompetent to have

made a will in 1983. The competency of a person to make a will is measured at the time he/she executes the will and not by their mental condition as it existed at an unreasonable number of years prior to the execution of the will.

The capacity of the testator at the time of making his will is the sole question to be determined in deciding upon the validity of the will on that ground, but evidence of the testator's mental and physical condition before and after making the will, within reasonable limits, is admissible.

*Pritchard on Wills and Administration of Estates,* § 98 at 141.

Plaintiffs seek to have this Court determine Mrs. Mayes' competency in 1983 on events which occurred between 1956 and 1969. They wish to have this Court measure Mrs. Mayes' mental condition at the time she executed the will in 1983 by events which occurred fourteen to twenty-seven years prior to making the will. We are of the opinion that such a lapse of time is not within "reasonable limits." The hospital records, prepared after Mrs. Mayes' last discharge from Eastern State on 22 October 1969, contained the following notation: "She was incompetent on admission and on release was in remission." There is no evidence in the record to indicate that this final diagnosis of competency has changed in the twenty-one years between Mrs. Mayes' discharge and her death in 1990. The record contains out-patient notes regarding Mrs. Mayes which were made from 26 January 1970 to 29 July 1974, all of which indicate that she was adjusting well and was mentally competent. The record also contains Eastern State's assessment of her condition when she was referred to Ross McNabb Mental Health Center for aftercare in August 1974. Eastern State described Mrs. Mayes as "lives alone,—goes to church and town and does her own house work and cooking. She has been seen by [psychiatrist] on a three-months' schedule and is judged to be adjusting well." The record contains no evidence that Mrs. Mayes had any further mental or emotional problems after this time up until her death in January 1990. This issue is without merit.

It results that the judgment of the trial court is affirmed with costs assessed to the plaintiffs and the cause remanded to the trial court for the collection of costs, the enforcement of the trial court's order, and any further necessary proceedings.

SANDERS, P.J. (E.S.), and McMURRAY, J., concur.