Steve MELENDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–94–00512–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 15, 1995.

Bruce D. Mosier, Michael A. McEnrue, Houston, for appellant.

Dan Morales, Jorge Vega, Laquita A. Hamilton, David A. Talbot, Jr., James R. Evans, Jr., Austin, for appellee.

Before OLIVER–PARROTT, C.J., and HEDGES and ANDELL, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from an eminent domain proceeding. The issues are whether the trial court committed reversible error by prohibiting testimony (1) from the landowner's expert witness, as a sanction for inadequately supplementing interrogatory responses, and (2) concerning the value of certain steel trusses on the condemned land. We reverse and remand for a new trial.

### Background and procedural history

In 1976, Steve Melendez, a welder, bought a tract of land along the Eastex Freeway in anticipation of moving his business to a more visible location. He bought 30 tons of steel trusses, and had them delivered and stacked on the property. In 1979, however, before

he was in a position to build the new shop, Melendez fell on financial difficulties and was forced to close his welding shop and work for another company. Nevertheless, Melendez continued to plan for the time when he could open his own welding shop along the Eastex Freeway, and in 1984, he received a waste-water permit from the City of Houston for the construction of the building.

Shortly after Melendez renewed the waste-water permit in 1984, the State contacted him to acquire the property in order to widen U.S. Highway 59 North. The State first directed him to remove the trusses from the property, but later told him that the State would pay for their removal. On January 22, 1990, the special commissioners awarded Melendez $17,000 for the property. The award did not include the value of the steel trusses.

After the commissioners' hearing, the State demanded that Melendez remove the trusses from the property. Some time during 1990, the State cut up the steel and removed it from the property.

Melendez filed objections to the commissioners' award on January 29, 1990.[1] On June 1, 1990, the State propounded interrogatories upon Melendez. Interrogatory number four inquired:

> Please list the name of each person you intend to call as an expert witness during the trial of this cause, or whose work product forms a basis, either in whole or in part, of the opinion of an expert who will be called as a witness at trial. For each person listed, state (a) the subject or area about which each such person is expected to testify; (b) the mental impressions and opinions held by each such person related to the subject matter of this litigation; (c) the facts known to each such person which relate to or form the basis of the mental impressions held by that person ...

Melendez responded to interrogatory 4(a) by stating that he did not know the answer at that time. To interrogatories 4(b) and 4(c) he replied "N.A."

On March 29, 1993, Melendez filed a designation of expert witnesses. The designation listed George Reed's name, address, and phone number, and stated:

> Mr. Reed is a real estate appraiser who has recently been employed by Defendant to form an opinion of the value of Defendant's property made the basis of this lawsuit and to testify as to that value. Mr. Reed has not yet completed his assignment. Defendant's counsel agrees to furnish a copy of his appraisal report to Plaintiff's counsel when it is completed.

Counsel for the State then set up a time to depose Reed and another expert witness, as well as a second deposition of Melendez. Reed completed his appraisal on June 12, 1993, and delivered his report to Melendez and to the State at his deposition on June 14, 1993.

At the pre-trial conference, the State sought a motion *in limine* to exclude any testimony of persons whose identities or locations were not set forth in Melendez' responses to the State's interrogatories. The State argued that this included Reed's testimony, because Melendez never supplemented his first interrogatory answers. The trial court ruled that Melendez timely designated his experts, but had failed to answer the State's original interrogatories concerning the substance of the expert testimony. The trial court then prohibited Melendez from presenting Reed's testimony. Melendez preserved error by presenting Reed's testimony in a bill of exceptions. The trial court also excluded any testimony concerning the value of the steel trusses.

The only issue in the case was the value of the condemned property. The jury heard two witnesses. Albert Allen, a certified appraiser, testified for the State that in his opinion, the land was worth $12,154. Melendez testified that in his opinion, the land was worth $40,000. The jury returned a verdict of $15,500.

---

1. Filing timely objections to the award of the special commissioners invokes the jurisdiction of the trial court and transforms the administrative proceeding into a judicial action. Tex.Prop.Code Ann. § 21.018 (Vernon 1984); *State v. Blackstock*, 879 S.W.2d 125 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

### First point of error

In his first point of error, Melendez argues that the trial court committed reversible error in excluding Reed's testimony concerning the value of the property.

Rule 166b(6)(b) provides:

If the party expects to call an expert witness when the identity or subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

TEX.R.CIV.P. 166b(6)(b). In addition, rule 215(5) states:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists.

TEX.R.CIV.P. 215(5). Thus, once the trial court determines that a party has failed to answer or supplement a response as required by rule 166b(6)(b), rule 215(5) mandates exclusion of the evidence unless the trial court finds good cause. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992). The purpose of rule 215(5) is to "require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush." *Id.*

We note first that this case is not one in which a party attempted to call a witness who had never been designated in response to an interrogatory. *See, e.g., Alvarado*, 830 S.W.2d at 913; *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669 (Tex.1990). Rather, Melendez timely filed a written designation of experts. The designation began, "Pursuant to Rule 166b...." The designation included "the name, address and telephone number of the expert witness and the substance of the testimony." TEX.R.CIV.P. 166b(6)(b). The designation stated that the expert had not yet completed his assignment and that counsel for Melendez would provide opposing counsel with a copy of the expert's report when it was complete. Finally, Melendez delivered the report to opposing counsel at the same time he received it, at Reed's deposition. Thus, the issue we must decide is whether Melendez' designation of experts and the fact that he furnished the State with his expert's deposition and report constituted sufficient supplementation under the rules.

At the hearing on the motion in limine, the State argued that because the interrogatory called for the expert's "mental impressions and opinions" and because Melendez did not expressly label the report or the designation as a "supplement," the State "could not have known with certainty that the mental impressions and opinions of Mr. Reed had been disclosed by his furnishing of a report." In the bill of exceptions, Reed testified that the report he gave to the State contained all of his opinions and the underlying facts from which they were drawn.

The State refers us to *Patton v. Saint Joseph's Hospital*, 887 S.W.2d 233 (Tex. App.—Fort Worth 1994, writ requested). There, the Fort Worth Court of Appeals held that "without expressly designating a report or deposition as supplementation, Rule 166b(6)(b)'s supplementation requirement is not met." *Id.* at 239. However, we find *Patton* unpersuasive for several reasons.

In the first place, *Patton* may be factually distinguishable: it is not clear from the opinion in *Patton* whether the offending party had ever actually designated its experts as possible witnesses. Here, by contrast, there is no dispute that Melendez timely designated Reed as an expert who would testify. In addition, Melendez' designation specifically referred to rule 166b. Thus, the State was indisputably put on notice that Melendez planned on calling Reed as an expert, and was aware of the substance of Reed's opinion.

Second, we disagree with *Patton's* holding that all supplementation must be expressly labeled as "supplementation." In *Weaver v. U.S. Testing Co.,* 886 S.W.2d 488, 491 (Tex.App.—Houston [1st Dist.] 1994, writ denied), we held that rule 166b(6)(b) does not require a party to sign a supplemental response. Our decision was based on the fact that the procedural requirements of rule 168(5) do not apply to supplemental written answers to interrogatories.[2] *Id.* Similarly, in *Jones v. Kinder,* 807 S.W.2d 868, 872–73 (Tex.App.—Amarillo 1991, no writ), the Amarillo Court of Appeals held that supplemental answers need not be verified, because rule 166b(6)(b) does not have a specific verification requirement. Provided that the opponent can determine which interrogatories they answer, supplemental responses need not be preceded by the particular questions eliciting them. *Soefje v. Stewart,* 847 S.W.2d 311, 314 (Tex.App.—San Antonio 1992, writ denied). Neither does rule 166b(6) state that supplemental responses must be labeled "Supplemental Responses."

We hold that on the facts of this case, Melendez' designation of experts was obviously a "supplementation" within the meaning of rule 166b(6)(b), whether or not it was labeled as such. Likewise, we believe that Reed's report, which Melendez referred to in his designation of experts, was a "supplementation." *See* Tex.R.Civ.P. 168(2) (providing that interrogatory answers may refer to other furnished records).

Finally, we disagree with *Patton's* conclusion that rule 215 mandates exclusion of the entire testimony of an expert objected to on lesser grounds than the utter failure to identify the expert. In *Sharp,* the supreme court held, among other things, that lack of surprise, unfairness, or ambush alone does not supply good cause under rule 215(5). *Sharp,* 784 S.W.2d at 671. Although we do not reach the issue of good cause, we nevertheless find the court's rationale on this point instructive:

> The fact that a witness' identity is known to all parties is not itself good cause for failing to supplement discovery. A party is entitled to prepare for trial assured that a witness will not be called *because opposing counsel has not identified him or her in response to a proper interrogatory.* Thus, even the fact that a witness has been fully deposed ... is not enough to show good cause for admitting the evidence *when the witness was not identified in response to discovery.*

*Id.* (emphasis added). In this case, by contrast, counsel *did* designate Reed as an expert witness, and provided the substance of his anticipated testimony. We read rule 215 to require the exclusion of any evidence that should have been disclosed but was not. If the deficient disclosure was a failure to designate witnesses, then the rule requires exclusion of the entire testimony. If, as in this case, the witness was properly designated, but there was inadequate supplementation, the proper sanction would be to limit the expert's testimony to what was previously disclosed. Here, such evidence would have consisted of Reed's report and deposition testimony. *See Smith v. O'Neal,* 850 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1993, no writ) ("Rule 215 does not mandate exclusion of the entire testimony of an expert objected to on grounds other than a failure to identify.... [The expert's] testimony was limited to what was in her report and to what she testified about in her deposition.").

In this case, counsel for the State, with the aid of the trial court's misinterpretation of the rules, managed to frustrate the discovery process by excluding testimony that *for over seven months* counsel knew would be offered at trial. Opposing counsel knew the substance of the testimony, explored the testimony through deposition questions, and had been given a report summarizing the expert's opinion and the facts underlying that opinion. At some point, common sense and rationality must prevail over the very gamesmanship and abuse that rule 215(5) was designed to avoid. We hold that it is an abuse of discretion for the trial court to find there has been inadequate sup-

---

2. Tex.R.Civ P. 168(5) provides in part that the answers to interrogatories "shall be signed and verified by the person making them."

plementation when, as in this case, (1) a party timely designates expert witnesses in response to an interrogatory, states in that designation that the party will provide the expert's report to opposing counsel when the report is complete, and provides opposing counsel with the report, and (2) the opposing party deposes the witness.[3]

The State argues that even if the trial court erred in excluding Reed's testimony, any error was harmless, because Reed's testimony was cumulative of Melendez' testimony. In support of this argument, the State points out that Melendez testified that the land was worth $40,000, but that Reed would have testified that the land was worth only $29,169. Thus, the State argues, because Reed's estimate was over $10,000 less than that of Melendez, no harm could have occurred. We are unable to agree with this assessment.

■ To obtain reversal of a judgment based on erroneously excluded evidence, appellant must show that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *Gee v. Liberty Mut. Fire Ins.*, 765 S.W.2d 394, 396 (Tex.1989).

The State overlooks the fact that the jury was asked to weigh the testimony of only two witnesses: Melendez, a party to the case; and Albert Allen, the State's expert witness. In such a case, the jury is likely to give greater weight to the opinion of an expert and less weight to an interested party. Given these circumstances, we hold that preventing Melendez from proffering his own expert witness "was reasonably calculated to cause and probably did cause rendition of an improper judgment." TEX.R.APP.P. 80(b)(1).

We sustain Melendez' first point of error.

### Second point of error

In his second point of error, Melendez argues that the trial court erroneously excluded testimony concerning the value of the steel trusses. Specifically, Melendez argues

that whether the trusses were fixtures or personalty is a question of fact, and that the trial court abused its discretion in deciding the issue during the pre-trial conference.

■ Three factors are relevant in determining whether personalty has become a fixture: (1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty. *Logan v. Mullis*, 686 S.W.2d 605, 607–08 (Tex.1985). Intention is the touchstone of the inquiry, and the first two factors constitute evidence of intent. *Id.* at 608.

■ Generally, whether a particular item is a fixture or personalty is a question of fact, and should be determined by the factfinder. *Alexander v. Cooper*, 843 S.W.2d 644, 646 (Tex.App.—Corpus Christi 1992, no writ); *Logan*, 686 S.W.2d at 608. However, if reasonable minds could not differ, the issue is one of law. *Logan*, 686 S.W.2d at 608. Thus, our task in reviewing this issue is to determine whether reasonable minds could differ concerning the nature of the steel trusses on the property in this case.

■ The dispositive fact is that the steel trusses were not affixed to the ground. From the time Melendez bought them, they were stacked on the ground, unattached to the property. While it is true, as Melendez points out, that ample evidence exists that he intended to erect a building using the trusses, the simple fact of the matter is that he did not erect a building. The court in *Logan* formulated the intent question as "the intention of the party *who annexed the chattel to the realty.*" 686 S.W.2d at 607. We believe that before the issue of intent arises, a party must raise a fact issue concerning whether the personalty has been actually or constructively attached to the realty. This Court has held that when personal property has been attached to realty and cannot be removed without materially damaging the property, it has lost its character as personal property

---

3. Because we hold that the trial court abused its discretion in determining that Melendez had not adequately supplemented his interrogatory answers, we do not reach the question of whether

Melendez met his burden to show "good cause" for admitting the testimony. *See* TEX.R.CIV.P. 215(5).

and becomes part of the realty. *Houston Bldg. Serv., Inc. v. American Gen. Fire & Casualty Co.,* 799 S.W.2d 308 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

Here, it was undisputed that the steel trusses were simply lying on the property the whole time that Melendez owned them. Without any evidence to show that the trusses were in any way attached or annexed to the property, there was not a fact issue as to whether the trusses were fixtures, and the trial court did not err in refusing to submit the issue to a jury. We hold that on the facts of this case, reasonable minds could not conclude that the steel trusses sitting on Melendez' property were fixtures.

We overrule Melendez' second point of error.

We reverse the judgment of the trial court and remand the cause for a new trial.