Jim GAWERC, Appellant,

v.

MONTGOMERY COUNTY,
Texas, Appellee.

No. 09–00–519 CV.

Court of Appeals of Texas,
Beaumont.

Submitted May 7, 2001.

Decided June 28, 2001.

C. Charles Dippel, Law Office of C. Charles Dippel, Houston, for appellant.

David K. Walker, County Atty., Anthony K. Benardino, Asst. County Atty., Conroe, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

BURGESS, Justice.

This appeal arises from an order of the trial court granting summary judgment in favor of Montgomery County, Texas (the County) and against Jim Gawerc. Following a condemnation proceeding in favor of the County, Gawerc filed suit asserting the County unlawfully appropriated personalty from the property and wrongfully withheld sums as an accounting and administrative expense for maintaining an account. The trial court granted summary judgment on both claims and Gawerc appeals.

The first basis for the County's motion for summary judgment was that the building materials were fixtures and their ownership passed to Montgomery County when title to the real property was awarded to the County in the condemnation proceeding. Similarly, the County's second ground was that the building materials were improvements and their ownership passed to Montgomery County when title to the real property was awarded to the County. We address these grounds together.

The County's sole argument in their motion was that because the building materials were purchased by and placed in the building by the previous owner with the intent of completing construction of the building, the materials were fixtures, or in the alternative, improvements. The County relies heavily on the presumption that

when an owner places an improvement upon real property, he intends it to become a fixture. *See Clark v. Clark,* 107 S.W.2d 421, 424 (Tex.Civ.App.—Texarkana 1937, no writ). In citing *Clark* however, the County fails to note that the "improvement" in question was a house—not the materials for which to build a house. In *Melendez v. State,* 902 S.W.2d 132, 137 (Tex.App.—Houston [1st Dist.] 1995, no pet.), the court noted, "[g]enerally, whether a particular item is a fixture or personalty is a question of fact, and should be determined by the factfinder." The court found it a "dispositive fact" that the steel trusses in questions were not affixed to the ground but were only stacked there, unattached to the property, and that while there was ample evidence Melendez intended to erect a building using the trusses, "the simple fact of the matter is that he did not erect a building." *Id.* As noted by the court in *Reames v. Hawthorne–Seving, Inc.,* 949 S.W.2d 758, 761 (Tex.App.—Dallas 1997, pet. denied), both an improvement and a fixture require annexation to realty, and until something is annexed to realty, it is neither an improvement nor a fixture.

In their first two grounds, the County makes no assertion the building materials were, in fact, annexed to the realty. They claim only that because the original owner *intended* to attach the materials to the realty, they were already fixtures, or alternatively, improvements. The County failed to establish as a matter of law that the building materials were in any way attached or annexed to the property. *See Melendez,* 902 S.W.2d at 137–38. Thus, the trial court could not have summary judgment on either the first or second ground in the County's motion.

■■■ The third ground upon which the County moved for summary judgment was that Gawerc's claims are barred by the doctrines of res judicata and collateral estoppel. The County's argument is based upon the question to the jury asking "[f]rom a preponderance of the evidence what do you find to be the fair market value of the ... land, including all improvements condemned by Montgomery County in this lawsuit." The County contends Gawerc has been compensated for the value of the property which is the subject of his lawsuit because that property was included in the charge to the jury as "improvements." The County's contention is based upon their having established that the property in question constituted an "improvement." As noted in our discussion above, the County failed to conclusively establish the property's character as an improvement. Accordingly, the trial court could not have granted summary judgment on that basis.[1]

■■■ Next, in its fourth ground, the County argued that Gawerc forfeited any right to remove the building materials by not removing them within a reasonable time. We first note "the rule that the law abhors forfeitures." *Fenlon v. Jaffee,* 553

---

1. The County also stated, without authority, that Gawerc was required to present these claims at the jury trial. But "[j]urisdiction of the trial court in condemnation proceedings is appellate, and although the trial is De novo, it is limited to the issues and the parties involved in the administrative proceeding before the special commissioners, the administrative tribunal from which the court's jurisdiction derives. *Texas Electric Service Co. v. Perkins,* 23 S.W.2d 320, 323 (Tex.Com.App. 1930, judgment adopted). The trial court is without power to enlarge the subject matter of the cause and is limited to review of only such matters as were properly before the commissioners. *Stirman v. City of Tyler,* 443 S.W.2d 354, 359 (Tex.Civ.App.—Tyler 1969, writ ref. n.r.e.)." The sole issue at the jury trial was the value of the property at the time of the condemnation proceeding and the record is clear that at that time the materials were not improvements.

S.W.2d 422, 429 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). Also, "[t]hat which constitutes a reasonable time is a question of fact or, at least, a mixed question of law and fact and depends upon the circumstances surrounding the case to which the principle is sought to be applied. What would be a reasonable time in one case might be wholly inadequate to shut off the rights of parties in a different case or under different circumstances." *Lewis v. Clark,* 149 S.W.2d 244, 248 (Tex.Civ. App.—San Antonio 1941, no writ)(citing *Meers v.Frick-Reid Supply Corp.,* 127 S.W.2d 493, 497 (Tex.Civ.App.—Amarillo 1939, no writ)).

In support of their argument, the County attached a letter dated June 23, 1997, notifying Gawerc that "Montgomery County will agree to delaying the actual taking of possession until July 1st, to allow for a removal of build-out materials or any other items not affixed to the realty. If additional time is needed, please advise." Further, the County attached an excerpt from a deposition given by Gawerc. Gawerc was asked, "Prior to September the 7th, 1999, or the date of release, did you remove any items of property from the Atrium Building after the condemnation of June 23rd, 1997?" He replied, "I don't recollect exactly. I don't believe so."

Gawerc incorporated his motion for partial summary judgment into his response to the County's motion. Attached to Gawerc's motion as summary judgment evidence are excerpts from his deposition and the deposition of Don LaFitte. LaFitte testified the locks at the Atrium Building were changed on or about July 3rd, 1997. In his deposition, Gawerc stated he made several attempts to retrieve his personal property prior to September of 1999 and on more than one occasion had made arrangements with the County to do so, but

no one from the County showed up to allow entry.

The County attached no summary judgment evidence that the time allotted from June 23rd to July 1st, (or the 3rd when Gawerc was actually locked out) was a reasonable time under the circumstances. Considering the quantity and bulk of the building materials pictured, we find reasonable minds could differ as to whether the amount of time allotted for Gawerc to exercise his right of removal was reasonable. *See Kirby Lumber Co. v. Temple Lumber Co.,* 125 Tex. 284, 83 S.W.2d 638, 642 (1935). The County's contentions that Gawerc did not attempt to exercise his right until September 7, 1999, was controverted by Gawerc. Therefore, we find the trial court could not have granted summary judgment on the fourth ground of the County's motion.

■ The fifth ground of the County's motion regards Gawerc's claim that section 117.054 of the Texas Local Government Code, which the County relied upon to withhold a portion of the interest earned upon the trust fund deposit, is unconstitutional. *See* TEX. LOC. GOV'T CODE ANN. § 117.054 (Vernon 1999). As this claim arises from the condemnation proceeding, it should have been raised in an appeal from that judgment. We are without jurisdiction to consider the merits of Gawerc's claims as it seeks to alter a judgment from which he did not appeal. *See* TEX.R.APP. P. 25.1.

Accordingly, we affirm that part of the trial court's order granting summary judgment on Gawerc's cause of action for recovery of the sums withheld by the County as an accounting and administrative expense for maintaining the account. That part of the trial court's order granting summary judgment on Gawerc's cause of action for the County's appropriation of his

personalty is reversed and the cause remanded.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

GAULTNEY, Justice, dissenting.

I respectfully dissent. I would hold the trial court correctly granted summary judgment; this action is barred by *res judicata*.

Here I use *"res judicata"* to refer to claim preclusion. Claim preclusion bars the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that should have been litigated in the prior suit. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex.1992). A careful examination of the record demonstrates the value of these materials was, of necessity, litigated in the initial condemnation trial.

In **November of 1996**, Gawerc made a written offer to sell the building in question to Montgomery County for $1,350,000, **including the build-out materials.** The offer specified the following:

> The Second Story/Floor is not yet fully built out. **However, all of the materials necessary to accomplish this task have already been purchased and will be sold with the building and are included in the selling price.** (emphasis added)

On **June 3, 1997,** the special commissioners awarded Gawerc $933,663 in compensation. On **November 16, 1998,** Gawerc began a jury trial in his appeal of the compensation awarded by the special commissioners. Gawerc acknowledged in a recent deposition he was aware during the condemnation trial that the County was using the build-out materials to complete the interior of the building. On **December 2, 1998,** the trial court entered judgment on a jury verdict awarding Gawerc an additional $585,057 plus prejudgment interest—a total of over $1.5 million, compared to his 1996 offer to sell the building, including the build-out materials, for $1.35 million. The jury returned the $1.5 million award after being expressly instructed to include the value of any improvements to the property.[2]

A property owner whose property is condemned is entitled to be compensated for the value of the property as put to its "highest and best use." *See State v. Windham,* 837 S.W.2d 73, 77 (Tex.1992). In deciding market value the jury is permitted to consider all the uses to which the property is reasonably adaptable and for which it is, or in all reasonable probability **will become,** available within the foreseeable future. *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808, 815 (1954).

The jury charge in the condemnation trial explicitly instructed the jury to this effect. Instruction No. 1 stated:

> You are instructed that the term "Fair Market Value" as used in this charge means the price that the property will bring when it is offered for sale by one who desires to sell but is not obligated to sell and is bought by one who desires to buy but is under no necessity to buy, taking into consideration **all the uses to which the property is reasonably adaptable** and for which it either is or in all reasonable probability **will become available in the future.** (emphasis added)

Instruction No. 2 stated:

> In arriving at your determination of market value, you shall consider the

**2.** Jury Question No. 1 in the condemnation trial asked the jury to determine "the fair market value of the ... land, **including all** **improvements,** condemned by Montgomery County in this lawsuit on June 23, 1997[.]" (emphasis added)

"highest and best use" of the property, that is, the best or most valuable use to which the property **is adaptable.** (emphasis added)

The "highest and best use" of an unfinished office building must include building out the interior to make it fully habitable and usable as an office building. Building out the interior of an otherwise completed building is part of fitting it for "all the uses to which the property is reasonably adaptable." The jury was asked in the condemnation case to award Gawerc the building's value in its "highest and best use," which necessarily meant fully built-out with the materials that had already been sealed inside the building for that purpose. *Res judicata* precludes a second action based on claims that were raised or could have been raised with due diligence in the first action. *See Barr,* 837 S.W.2d at 630–31. The jury's award in the condemnation case necessarily reflects its determination, as finder of fact, of the value of the building once the interior was completed with the build-out materials.[3] Gawerc's action is barred by *res judicata,* since he seeks to relitigate an issue of fact which has been "finally adjudicated." *See Barr,* 837 S.W.2d at 628.

Furthermore, the jury in the condemnation case awarded Gawerc the value of the property including improvements. Any build-out materials in the building had become "improvements" as a matter of law by the conclusion of the condemnation trial. The majority correctly cites *Reames v. Hawthorne–Seving, Inc.,* 949 S.W.2d 758, 761 (Tex.App.—Dallas 1997, writ denied) for the proposition that personalty does not become an improvement or fixture un-

til it is annexed to realty. The build-out materials had been "annexed to the realty" even before the interior work on the building was completed. Three factors are relevant in determining whether personalty has become a permanent part of the realty to which it is affixed: "(1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the personalty to the use or purpose of the realty[;] and (3) the intention of the owner who causes the personalty to be annexed to the realty." *Sonnier v. Chisholm–Ryder Co.,* 909 S.W.2d 475, 479 (Tex.1995) (*citing Logan v. Mullis,* 686 S.W.2d 605, 607 (Tex. 1985)). Here, Mike Oakes, the original builder and owner of the building, stated his intent in placing the build-out materials in the building as follows:

The common practice in constructing multi-story buildings is to place the materials which will be necessary to build out the interior of the floors, on each floor, in the initial phases of the construction project. The reason for this is because it is extremely more difficult, expensive, and inconvenient to try to move the material, piecemeal, to the upper floors, after the exterior of the building is closed in. The most efficient and expedient way to construct such a building is to use a crane to place the bulky materials such as sheetrock and doors on the various floors, before the exterior walls are closed in. This was the process which was used in the construction of the Atrium Office Building[.]

. . . .

It was always my intent, from the time I first purchased these materials and had them delivered to the building, that they be permanently affixed to the building

---

3. Even if we assume the sum awarded in the condemnation trial was less than the built-out value of the building, the built-out value is what Gawerc could and should have requested. *See generally Texas Water Rights Comm'n*

*v. Crow Iron Works,* 582 S.W.2d 768, 772 (Tex.1979) (record did not show whether claim had been raised in earlier action, but because it might have been raised, claim was barred by res judicata).

during the completion of the construction ... [T]hey were a permanent part of the building, once they were placed on the various floors of the building, even though they had not yet been installed.

. . . .

Additionally, once materials such as those ... are placed in a multi-story building, such as these materials were, it would not be economically feasible or practical to remove the material from the building. In the case of much of the building materials ..., removal from the building would in all probability, require the removal of exterior windows of the building and the construction of a temporary landing area at the level of each floor from which the bulky materials are being removed, to allow a crane to reach the materials.

Oakes' affidavit establishes all three factors of the *Sonnier* analysis. It answers the question of the "mode and sufficiency of the annexation" by pointing out that the materials were essentially sealed inside the building; it answers the "adaptation of the article to the use or purpose of the realty" by establishing that the materials left on each floor were exactly those which Oakes thought would be needed to finish the interior of that floor; and it unequivocally states "the intention of the owner who causes the personalty to be annexed to the realty." *Sonnier*, 909 S.W.2d at 479.

Since Gawerc necessarily was compensated for a building with a fully-finished interior in the condemnation trial—the highest and best use to which the building was reasonably adaptable—he is barred by res judicata from receiving double compensation for the build-out materials as separate property. He has already been compensated for the material used in the

building. I would affirm the summary judgment.