IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs December 6, 2001

## IN RE: T. F., STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. DAVINA FRAZIER

**A Direct Appeal from the Juvenile Court for Madison County**
**No. 33-28, 891      The Honorable Christy R. Little, Judge**

---

**No. W2001-01935-COA-R3-JV - Filed February 19, 2002**

---

Minor child was removed from mother's custody because mother neglected to provide child with proper medical care and treatment. Mother entered into a permanency plan and child was temporarily placed with a family member. The trial court terminated mother's parental rights to the child, finding clear and convincing evidence that: (1) mother had not substantially complied with the conditions of the permanency plan; (2) there was little likelihood that the conditions leading to child's removal would be remedied in the near future, and that the continuation of the parent-child relationship would greatly diminish the child's chances of early integration into a safe, stable and permanent home. Mother has appealed. We affirm

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Carl E. Seely, Jackson, For Appellant, Davina Frazier

Paul G. Summers, Attorney General & Reporter, Dianne Stamey Dycus, Deputy Attorney General, For Appellee, Tennessee Department of Children's Services

### OPINION

This is an action for termination of parental rights. On January 12, 2000, the Tennessee Department of Children's Services ("DCS") removed 9-month-old T.F. from his mother's custody due to medical neglect. The record indicates that DCS received a referral of possible neglect regarding T.F. on December 28, 1999, and DCS investigated. After DCS determined the child was ill, a DCS caseworker assisted the child's mother in scheduling a doctor's appointment for December 31, 1999. T.F.'s mother, Davina Frazier ("Ms. Frazier" or "Mother"), failed to keep the doctor's appointment and, on January 1, 2000, the caseworker arranged for the child to receive medical treatment and medication for an ear infection and upper respiratory infection.

When the caseworker returned to check on T.F. several days later, she found that he was still sick and running a fever. The caseworker asked Ms. Frazier about the child's medication, to which Ms. Frazier responded that "she wasn't sure where the medication was," and that the child had not been given his medication for at least several days. The caseworker took T.F. and Ms. Frazier to the emergency room on January 10, 2000, at which time T.F. was diagnosed with pneumonia.

On January 12, 2000, DCS Case Manager Beverly Whaley filed an Affidavit of Reasonable Efforts and Petition for Temporary Custody with the Juvenile Court of Madison County, Tennessee. The trial court entered a Protective Custody Order the same day, and T.F. was placed in state custody. After a preliminary hearing held on April 11, 2000, which Ms. Frazier did not attend, Judge Walter Baker Harris entered a default judgment based upon the allegations in the original DCS petition, and ordered that T.F. remain in state custody.

After T.F. was removed from Ms. Frazier, DCS implemented a permanency plan with the goal of reuniting mother and child on a permanent basis, which Ms. Frazier signed in agreement. In the plan, Ms. Frazier agreed to participate in a psychological evaluation, attend parenting classes, submit to random drug screens, visit weekly and maintain contact with DCS. However, on November 6, 2000, DCS filed a Petition to Terminate Parental Rights (the "Petition") against T.F.'s mother and alleged father. The Petition alleges, in pertinent part:

> 9.a. Pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(l), and § 36-6-113(g)(1), and § 37-2-402 (10)(A), respondents have abandoned this child for more than four (4) consecutive months next preceding the filing of this Petition on information and belief. Further, respondents have abandoned, in that they have willfully failed to support or make reasonable payments toward the support of this child for four (4) consecutive months immediately preceding the filing of this Petition. The child's mother, Ms. Davina Frazier, has not visited with the child since March 2, 2000. The child's father, Shavion Develle Weakly, has only visited the child once to the knowledge of the Department of Children's Services, when the child was approximately two (2) months old. Further, the child's mother has made sporadic contact with the Department to aid the Petitioner's attempt to reunify the minor child with his mother.
>
> b. Respondents have failed to visit said child for the four (4) months preceding the filing of this Petition. It is believed that the Respondents have the ability to visit the child, and willfully refused to do so.
>
> c. A permanency plan was prepared by the Department of Children's Services, and was signed by the child's mother, Davina Frazier, on February 2, 2000 and entered and signed by the Juvenile Court of Madison County, Tennessee on April 5, 2000. The mother has failed to comply with the conditions in said plan. The

responsibilities as set forth in the plan of care are reasonable, and related to remedying the conditions that brought the child into foster care. Respondent has been in substantial non-compliance with said plan.

       d. The child was originally removed due to allegations that the mother was failing to provide for its health. The child has been removed by Order of the Juvenile Court of Madison County, Tennessee for a period of six (6) months, and the conditions which led to the child's removal still persist, and would subject the child to further abuse or neglect. There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned in the near future, and the continuation of the parent and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

The trial court entered an Order on Termination of Parental Rights and Partial Guardianship on February 2, 2001, in which Mr. Weakly's parental rights to T.F. were terminated.[1] In that Order, the trial court appointed Ms. Frazier counsel and reset the hearing on termination of Ms. Frazier's parental rights for March 6, 2001. Following the March 6th hearing, the Juvenile Court of Madison County, Judge Christy R. Little, presiding, entered an Order on Termination of Parental Rights and Full Guardianship which terminated Ms. Frazier's rights to T.F. That Order, entered on March 26, 2001, provides, in part:

       2.     That the evidence is clear and convincing, that the respondent Davina Frazier, had entered into a permanency plan with the Department of Children's Services and was signed by the child's mother, Davina Frazier, on February 2, 2000 and entered and signed by the Juvenile Court of Madison County, Tennessee. The mother has failed to comply with the condition in said plan in that she failed to submit to random drug screens and that she failed to follow up on a psychological evaluation as required on the plan. The responsibilities as set forth in the plan of care were reasonable, and related to remedying the conditions that brought the child into foster care. The respondent, Davina Frazier has been in substantial non-compliance with said plan.

       3.     That the evidence is clear and convincing that the child was removed by Order of the Juvenile Court of Madison County, Tennessee for a period of six (6) months, and the conditions which led to the child's removal still persist, and would subject the child to further abuse or neglect. There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned in the near future, and the continuation of the parent

---

[1] Mr. Weakley has not appealed.

and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

4.      That it is, therefore, in the best interest of said child and the public that all of the parental rights which respondent, Davina Frazier, may have to said child, be forever terminated and that the complete custody and control, and full guardianship of said child, should be now awarded to the Tennessee Department of Children's Services, with the right to place the child for adoption and consent to such adoption in loco parentis.

Ms. Frazier appeals from this Order, and presents the following issues for review, as stated in her brief:

I.      Whether the Respondent's lapses in compliance with the Permanency Plan amount to 'substantial non-compliance with the child's permanency plan' as envisioned in T.C.A. § 36-1-113(g)(2); II.      Whether the Trial Court's finding of a 'persistence of the conditions' that led to the initial removal is supported by clear and convincing evidence;  III. Whether the Order dated April 24, 2000 conferred upon the Respondent the option of re-litigating the Merit, or Adjudicatory phrase of the dependency and neglect proceeding and, if so, has she been wrongfully deprived of that right.  Further, whether the procedural error in failure of the State to timely ratify the Permanency Plan renders it a nullity; and IV.  Whether the Trial Court's decision to terminate parental rights is supported by clear and convincing evidence.

We perceive the issues in this case to be: (1) Whether the trial court erred in finding clear and convincing evidence to support its decision to terminate Ms. Frazier's parental rights based upon Ms. Frazier's failure to substantially comply with the permanency plan and her failure to remedy the persistent conditions that prevent the return of the child to her custody; (2) Whether the Ms. Frazier has been deprived of her right to seek to set aside the finding of dependency and neglect through the trial court's order terminating her parental rights; and (3) Whether the Juvenile Court's failure to timely ratify the permanency plan renders the plan a nullity.  For the following reasons, we affirm the Order of the trial court.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court.  *See* Tenn. R. App. P. 13(d).  Further, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues.  *See* *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997).  The weight, faith, and credit to be given to any witness's testimony

-4-

lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

We begin our analysis with the well-established rule that a parent's right to the care, custody, and control of his or her child is fundamental under both the United States and Tennessee Constitutions. *See, e.g., In re Swanson*, 2 S.W.3d 180, 187 (Tenn. 1999); *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn.1994)*.* Because the termination of a fundamental right is at issue, courts must find that the grounds for termination of parental rights cases are proven by clear and convincing evidence under the applicable statute. *See, e.g., Tenn. Dep't of Children's Servs. v. Bates*, 2002 Tenn. App. LEXIS 26 (Tenn. Ct. App. 2002); *In re B.B.*, No. M1999-00643-COA-R3-CV, 2000 Tenn. App. LEXIS 399 (Tenn. Ct. App. 2000); *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000). The applicable statute, T.C.A. § 36-1-113(c)(2001), provides that:

> (c) Termination of parental or guardianship rights must be based upon:
>
> (1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
>
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

*Id.* The statute provides the following grounds for termination of parental rights which are relevant to this particular case are:

> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;[2]
>
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
>
> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child

___

[2] Although the Petition alleged abandonment as a ground for termination in this case, the trial court did not base its decision to terminate Ms. Frazier's parental rights on abandonment. Since neither party has raised the issue of abandonment on appeal, we will not address that issue here.

to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

T.C.A. § 36-1-113(g)(2001).

The juvenile court heard the testimony of six witnesses in this case, including the child's mother. The first witness, Beverly Wiley, was the first caseworker to assess T.F.'s condition following the original referral. Ms. Wiley testified that Ms. Frazier's failed to provide proper medical care for and administer medication to T.F. She indicated that DCS removed T.F. from Ms. Frazier because of Ms. Frazier's conduct in this regard.

The second witness, Gloria B. Daniels, a case manager for DCS, testified that she, Ms. Wiley, and Ms. Frazier worked together to develop a permanency plan which would allow T.F. to be returned to Ms. Frazier. Ms. Daniels testified that Ms. Frazier signed the permanency plan, which provided, among other things, that Ms. Frazier engage in regular visitation with T.F., undergo a psychological evaluation, attend parenting classes, and submit to random drug screens. Ms. Daniels indicated that Ms. Frazier never showed up for the psychological evaluation and, when she confronted Ms. Frazier about this, Ms. Frazier indicated that "she didn't have a ride." Ms. Daniels also testified that Ms. Frazier did not attend parenting classes and, although Ms. Daniels had arranged to meet Ms. Frazier for the drug screen, Ms. Frazier never returned her calls. Ms. Daniels testified that, to the best of her knowledge, Ms. Frazier had not visited T.F. regularly, although visitation was scheduled on a weekly basis. She also testified that, after February 2, 2000. DCS was not informed of Ms. Frazier's whereabouts, and was unable to contact her. Ms. Daniels indicated that, as part of the permanency plan, Ms. Frazier signed a statement which explained that non-compliance with the plan could lead to termination of Ms. Frazier's parental rights.

The third witness, Jenny Davis, a residential case manager with DCS, testified that she is in charge of coordinating state-provided services for the child and working with the foster parents. She indicated that T.F. was "[d]oing wonderful" with his foster mother, Melissa Granito. Ms. Davis indicated that, although T.F.'s mother might have visited with him, she was not aware of the number of visitations, if any, had occurred.

The court next heard the testimony of Melissa Granito, T.F.'s foster mother. Ms. Granito testified that, as T.F.'s second cousin[3], when she heard that T.F. had been removed from his mother, she applied for custody. Ms. Granito told the court that she was aware of only "a couple of times" when Ms. Frazier visited her son. She indicated that, if permitted to adopt T.F., she would welcome visits from Ms. Frazier, although she acknowledged that she could not be legally required to allow Ms. Frazier to visit with T.F.

The next witness was Davina Frazier, T.F.'s mother. She testified that nobody had asked her to submit to drug screening tests or pay support for her son. Ms. Frazier indicated that she did not attend parenting classes because "they told me I would have to have a referral to go down there." In her testimony, Ms. Frazier insisted that she lives with her mother. On cross-examination, however, counsel for DCS asked Ms. Frazier why her mother denied that Ms. Frazier lived with her. Ms. Frazier replied, "She tells everybody that I don't stay there, so I don't know why, but she tells everybody that I don't stay there." Ms. Frazier also indicated that she visits her two other children, who are not in her custody, on a daily basis. She also testified that she is currently unemployed.

The Guardian Ad Litem, Buff Handley, in her closing statement, indicated that she believed the termination was in T.F.'s best interests, and that Ms. Granito should be permitted to adopt T.F. Ms. Handley indicated that T.F. appeared happy in his foster home, and that Ms. Granito's two children "both adore" T.F. She also explained that terminating Ms. Frazier's rights to T.F. would not sever the relationship between T.F. and Ms. Frazier's other two children, in that she believed Ms. Granito would allow T.F.'s relatives, including Ms. Frazier, to visit him regularly. Ms. Handley stressed that T.F. had become very attached to his foster mother, and that he depends upon her and can continue to depend upon her.

In her ruling from the bench, the juvenile court judge found as follows:

> . . . [T.F.] is your child and nothing – nothing anybody is going to do is going to take away the fact that you had him, but it takes a lot more that just having them these days. You've got to follow through with that responsibility.
> These are always the worst, but it's not as difficult in this case simply because you're going to have contact if your rights are terminated. . . . I'm going to make a finding of clear and convincing evidence on the – on the noncompliance of the permanency plan as it relates to the psychological. I think Ms. Daniel's testimony was she didn't keep her appointment. And I know because I have a fax and I get updates from them that they will reschedule and if it's a problem, they'll take care of it. And also the drug – the random drug screening that she did not comply with the permanency plan.

---

[3]The record indicates that Ms. Granito is a first cousin of Mr. Weakly, T.F.'s biological father.

I'm also going to make a finding that she didn't make the effort to remedy the problems that led up to the removed and that she's now not working, and I would assume perhaps the medical neglect stems from the fact there either . . . weren't any funds available to get the medicine or there wasn't . . . a car to go get them because there wasn't money to do so. And . . . there's a question as to whether she's living with her mom or not. And if I had a termination pending, I would certainly be getting my business in order.

Also, I'm going to make a finding that it is in the best interest of the child, no doubt, for the termination to proceed.

The judge declined to make a finding on the issue of visitation.

We believe the above evidence satisfies the "clear and convincing" requirement under the termination statute as to Ms. Frazier's noncompliance with the permanency plan. Although Ms. Frazier was aware of the threat of termination of her parental rights to T.F., she took only minimal steps to attempt to comply with the permanency plan. Ms. Frazier had few plausible reasons for why she missed doctor's appointments, her psychological evaluation, drug testing, and parenting classes.

We also believe there is clear and convincing evidence that Ms. Frazier has not and will not in the near future remedy the conditions that led to T.F.'s removal. Ms. Frazier has indicated that she wants to get a job, but has presented no evidence that she has been actively seeking employment. It is also clear that Ms. Frazier has made little, if any, effort to establish a permanent residence, and that DCS has had difficulty maintaining contact with her. On this point, we note that Ms. Frazier's first court-appointed attorney, in support of her Motion to Withdraw, indicated that she had "made numerous attempts" to contact Ms. Frazier, "both by telephone and U.S. Mail," but was "unsuccessful in these attempts," and that she had been unable to locate her client "through family members" and "unable to ascertain a correct residence address, telephone number or place of employment."[4]

In her testimony, the residential case manager for DCS explained that T.F. has "[a]lmost a continual sinus problem" and allergies. She indicated that T.F.'s foster mother, Ms. Granito, regularly treats the child's symptoms with over-the-counter-medication "mostly." This testimony is in sharp contrast to that of T.F.'s mother. When asked why DCS removed T.F. from her custody, Ms. Frazier replied, "They said it was because of health problems, lack of health." Ms. Frazier also indicated that T.F. had been diagnosed with pneumonia before, but the testimony regarding her inability to locate T.F.'s medication is unchallenged in the record. Whether T.F.'s poor health was due to his mother's neglect or poverty, under the conditions which existed at the time of the hearing on termination of parental rights, it is highly unlikely that Ms. Frazier would be able to provide T.F. with a stable home environment and access to medical care as needed now or in the near future.

---

[4]The trial court granted the Motion to Withdraw on November 14, 2000.

Finally, we believe the trial court properly found that the termination was in T.F.'s best interests. The evidence we have cited above regarding the stability of Ms. Frazier's working and living situation is clearly of great concern. There is no evidence in the record which would indicate that Ms. Frazier's situation will change at any time in the future. Such a situation has posed, and will continue to pose, a substantial risk of harm to T.F., should he be returned to his mother's custody.

Evidence presented at the termination hearing supports DCS' position that T.F.'s placement with Ms. Granito has and will continue to be in the child's best interests. T.F. calls Ms. Granito "Mother," and has known no other adult upon whom he can rely since the age of nine months. Ms. Granito, by all accounts, has provided T.F. with a stable home and family life.

For these reasons, we affirm the Order of the trial court terminating Ms. Frazier's parental rights to T.F. on all bases.

In her appellate brief, Ms. Frazier has also raised the issue of her unexercised option to set aside the dependency and neglect finding which was entered by default on April 24, 2000. Neither party appears to dispute that such an option exists, pursuant to court order, and the record does not indicate the duration of this option.

Both the Tennessee Rules of Civil Procedure and Juvenile Procedure give a defendant the right to seek to set aside a default judgment. *See* Tenn. R. Civ. Pro. 60.02 (2001), Tenn. R. Juv. Pro. 34 (2001). However, this right is not unlimited in duration, and the party seeking to set aside a default judgment has the burden of demonstrating that he or she is entitled to relief from the judgment. *See Nelson v. Simpson*, 826 S.W.2d 483, 485 (Tenn. Ct. App. 1991). Similarly, the moving party must "show that they had a valid reason for not timely objecting to the final order which they seek to set aside and that they had a "meritorious defense" which, if heard, could have precluded the entry of the order." *In re Estate of Mayes*, 843 S.W.2d 418, 425-36 (Tenn. Ct. App. 1992) (citing *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 100 (Tenn.1984).)

In this case, Ms. Frazier has not filed papers with the juvenile court seeking to set aside the default judgment of dependency and neglect. Neither has Ms. Frazier's attorney indicated upon what grounds she would seek such relief. Absent any support for Ms. Frazier's position *vis-a-vis* setting aside the default judgment, we hold this issue to be without merit.

Ms. Frazier further argues that, since the Juvenile Court did not ratify the permanency plan within 60 days of its promulgation, the trial court should have declared the plan a nullity. *See* T.C.A. 37-2-403(a)(2)(A). While we agree that the statute does require the court to ratify the plan within 60 days of the foster care placement, we do not believe that failure to follow the prescribed time line is grounds for nullifying the permanency plan. The Tennessee Supreme Court has recognized that, although a statute may specify a particular mode or time for performance of an act, these specifications are generally directory in nature:

> In general, when determining whether a procedural requirement of a statute is directory or mandatory, the object is to

> ascertain the legislative intent by consideration of the entire statute, including its nature and purpose, and the consequences that would result from a construction one way or the other. ***Stiner v. Powells Val. Hardware Co.***, 168 Tenn. 99, 103-104, 75 S.W.2d 406, 407 (1934). Directory provisions require only substantial compliance. ***State ex rel. Robbins v. City of Jackson***, 218 Tenn. 322, 325, 403 S.W.2d 304, 305 (1966). Statutory provisions relating to the mode or time of doing an act to which the statute applies are ordinarily held to be directory rather than mandatory. ***See Trapp v. McCormick***, 175 Tenn. 1, 10, 130 S.W.2d 122, 125 (1939).

***Presley v. Bennett***, 860 S.W.2d 857, 860 (Tenn. 1993).

We believe DCS substantially complied with the statute in question. In this case, the permanency plan was ratified 62 days after DCS workers developed the plan and Ms. Frazier approved it. We find it difficult to imagine that a delay of two days in ratifying the plan is prejudicial to either the mother or child in this case, and hold that such a delay constituted, if anything, harmless error.

For the foregoing reasons, we affirm the order of the trial court and find that the trial court properly terminated Ms. Frazier's parental rights to T.F. based upon clear and convincing evidence. This case is remanded to the trial court for any further proceedings consistent with this opinion. Costs of this appeal are assessed to the Appellant, Davina Frazier, and her sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.